ANGLO-AMERICAN LAND, MORTGAGE & AGENCY COMPANY (Limited), Appellant, v. E. J. BUSH et al., Appellees; and J. H. CRAWFORD, Appellee, v. JAMES L. LOMBARD, Appellant.

1. **Appeal**: WAIVER OF: ACCEPTANCE OF PAYMENT OF JUDGMENT. Where the amount for which a mortgagee was entitled to a decree in a suit to foreclose his mortgage depended to some extent upon the credits which should be allowed for rents collected by a trustee, and upon decree being rendered the mortgagee caused execution to issue, and the mortgaged premises were sold for an amount sufficient to satisfy the judgment, held, that the right of the mortgagee to further contest the correctness of the amount of his recovery by an appeal to the supreme court was waived.

2. **Judgment**: ASSIGNMENT IN FAVOR OF SURETY: VALIDITY. Where a husband advanced money to his wife for the purpose of procuring an assignment to her of a judgment against himself as surety, and subsequently under execution and sale had under said judgment the wife obtained sheriff's deeds to certain real estate, held, that the assignment and deeds were valid.

3. ————: ASSIGNMENT OF RENTS AND PROFITS IN LAND: PRIORITY OF LIENS. Before said judgment was rendered, the owner of the lands sold under execution thereon had, by an agreement duly acknowledged and recorded, assigned, turned over and transferred to one as trustee for the mortgagee of said property, "all his right, title and interest in and to the possession and rents" of said property for the purpose of protecting the mortgage security, and decreasing the amount of the mortgages against the same. Held, that the purchaser at said execution sale, upon acquiring a sheriff's deed, was not entitled to the possession of said premises, nor to the rents and profits thereof, as against the mortgagee or his assigns, until said mortgage had been satisfied.

4. ————: ————: ————. The assignment of the rents and profits above referred to provided that the same should be applied by the trustee to paying off the notes which matured first under the terms of said mortgage. Held, that one who had taken an assignment of the three notes first maturing, under an agreement that he would hold the same as junior and inferior to the lien of all the other notes secured by said mortgage, was not entitled to have said rents first applied to the payment of his notes.

5. **Practice in Supreme Court**: DISPUTING RECORD. Where the record in the supreme court shows that an appeal has been taken, the denial of such fact in argument by the appellee will not avail to raise the question of the jurisdiction of the court.

6. **Mortgage:** RELEASE: DAMAGE TO HOLDER OF NOTES. Where a mortgagee, after assignment of a part of the notes secured by his mortgage, without the knowledge of the assignee of said notes, released a part of the mortgaged premises in consideration of the payment by the mortgagor of a part of the mortgage indebtedness, and applied the sum so received upon the notes held by him, *held*, that the mortgagee was liable to said assignee for the difference between the value of the property released and the amount paid by the mortgagor, to the extent that such sum might he necessary to satisfy·the notes held by the assignee after exhausting his other security.

*Appeals from Union District Court.*—HON. J. W. HARVEY, Judge.

SATURDAY, JANUARY 23, 1892.

ACTIONS in equity to recover certain amounts alleged to be due the plaintiffs, and for the foreclosure of a mortgage given to secure their payment. The material facts involved in the appeals are stated in the opinion.—*Reversed.*

*D. H. Ettien*, for appellant.

*McDill & Sullivan*, for appellees, S. E. Rex and C. S. Rex.

*Enoch & Winter* and *T. M. Stewart*, for appellee, J. H. Crawford.

ROBINSON, C. J.—On the twenty-eighth day of April, 1884, the defendants, Edwin J. Bush and Kate B. Bush, his wife, executed and delivered to James L. Lombard their six promissory notes. Of these, one was for the sum of five hundred dollars, due November 1, 1885; one was for five hundred dollars, due February 1, 1886; one was for one thousand dollars, due July 1, 1886; one was for one thousand dollars, due November 1, 1886; one was for three thousand dollars, due May 1, 1888; and one was for six thousand dollars, due May 1, 1889. Coupons providing for interest at the rate of eight per cent. per

annum were attached to these notes.  A. P. Stephens
was surety on the first four of them.  For the pur-
pose of securing the payment of the notes, Edwin J.
and Kate B. Bush executed and delivered to James L.
Lombard a mortgage upon property situated in
Union county, Iowa, described as follows:  Lots num-
bered 84 and 85 in West Creston, section A, an
addition to the original town of Creston, according to
the recorded plat thereof; and part of lots 297 and 298
in the original town of Creston, according to the
recorded plat thereof, described as follows:  Commen-
cing at the south-east corner of lot 297, and running
from thence north seventy-six feet; thence west forty
feet; thence south seventy-six feet; thence east forty
feet, to the place of beginning,—together with all the
improvements and appurtenances thereunto belonging.
This mortgage was duly recorded on the day after it
was given, on page 133, of book 39, of Union County
Records.  The lots numbered 84 and 85, with the
improvements thereon, constituted the homestead of
the mortgagors.  Lots numbered 297 and 298 were
occupied by a two-story building, known as the "Eagle
Block," which had a front of one hundred and twenty
feet, and extended over that part of these lots described
in the mortgage.  That part of the block covered by
the mortgage included two store-rooms, of the value of
about fifteen thousand dollars.  It appears that, at
about the time this mortgage was given, two others
were given by the same mortgagors,—one to the
Edinburg Lombard Investment Company on a part of
lots numbered 297 and 298, twenty feet in width, west
of and adjoining that portion mortgaged to James L.
Lombard; and the other to B. Lombard, Jr., on a part
of the same lots, twenty feet in width, west of and
adjoining that portion mortgaged to the Edinburg
Lombard Investment Company.  Each of the two
mortgages last described appear to have been given to
secure the payment of an indebtedness of three

thousand dollars. The three mortgages described together included the east two thirds of Eagle block. On the twenty-fifth day of February, 1887, E. J. Bush, James L. Lombard and W. F. Patt entered into an agreement in writing, by which Bush assigned and transferred to Patt, as trustee, that portion of lots 297 and 298 which was included in the three mortgages. The agreement recited that Lombard controlled mortgages upon the premises transferred to the amount of eighteen thousand dollars, of which three thousand dollars was past due, and that, in consideration of the making of the contract, he agreed to forbear and not commence legal proceedings to foreclose the mortgages before the first day of May, 1889. The agreement provided that the trustee should hold and control the buildings included in the premises transferred, lease them, and collect the rents, until the whole amount secured by the mortgages thereon should be paid. The money collected by the trustee was to be applied as follows: *First.* To the payment of all taxes and assessments on the property as they should become due and payable. *Second.* To keeping the buildings insured for the sum of fifteen thousand dollars. *Third.* To the payment of interest on the eighteen thousand dollars secured by the mortgages. *Fourth.* To the payment of the principal of the sums secured by the mortgages in the order of their maturity. The agreement was acknowledged, and duly recorded on the thirtieth day of March, 1887. Patt took possession of the property, and proceeded to execute the powers conferred upon him by the agreement. In May, 1889, Patt resigned as trustee, and was succeeded by L. C. Teed. In the latter part of July, 1889, James L. Lombard sold and transferred to J. H. Crawford the first three notes, amounting to two thousand dollars, besides interest secured by the Bush mortgage of April 28, 1884, by an indorsement on each note, in words as follows:

"I hereby assign the within note to J. H. Crawford, without recourse on me. This assignment is made upon the express agreement and understanding that the said J. H. Crawford shall and will hold the same as a junior and inferior lien to all the other notes secured by the mortgage recorded in book 39, page 133, Union county, Iowa, and that he shall not attempt to enforce any lien upon these notes until all of the other notes named in said mortgage are paid in full.

"[Signed]        JAMES. L. LOMBARD."

By a warranty deed dated the twenty-ninth day of October, 1888, Bush and his wife conveyed lots 84 and 85 to Emma M. Hibbard. This deed was duly recorded, probably on the sixth day of February, 1889, although the abstract states that it was done in the year 1888. On the twenty-eighth day of December, 1888, James L. Lombard executed a release, in the form of a quitclaim deed, from the mortgage to him of lots 84 and 85. The release was in favor of Edwin J. Bush, and was given for the stated consideration of twenty-five hundred dollars, and was duly recorded on the sixth day of February, 1889. On the sixth day of March, 1888, B. Lombard, Jr., recovered judgment in the superior court of Creston against Bush and his wife and C. S. Rex for the sum of thirteen hundred and five dollars and twenty-eight cents, and costs. Rex was in fact surety for the indebtedness on which the judgment was rendered. In April, 1888, the judgment was assigned to S. E. Rex, the wife of C. S. Rex; a general execution was issued on the judgment, and levied on those portions of lots 297 and 298 covered by the three mortgages we have described. The portions so levied upon were sold under the execution on the fourth day of August, 1888, to S. E. Rex. Redemption not having been made from the sale, the sheriff executed to the purchaser deeds for the premises sold on the fifth day of August, 1889. On the twenty-sixth day of September, 1889, James L. Lombard, S. E. Rex and

the trustee, Teed, entered into an agreement by virtue of which the trustee was to collect the rents of the property covered by the sheriff's deeds from the sixth day of August, 1889, until the controversy which had arisen between the various parties in interest, in regard to the right of possession of the property, should be finally determined by the courts, the rents so collected to be deposited in the Creston National Bank. The Anglo-American Land, Mortgage & Agency Company, having become the owner of the note for three thousand dollars and the one for six thousand dollars made to James L. Lombard, commenced its action to recover the amount due on the notes, and to foreclose the mortgage given to secure them. Edwin J. and Kate B. Bush, J. H. Crawford, C. S. and S. E. Rex, and others, whose names need not be given, were made parties defendant. Crawford and Mrs. Rex appeared and filed answers. Mrs. Rex set up her title acquired by sheriff's deeds; claimed the right of possession of the property therein described from the sixth day of August, 1889, until the foreclosure of the mortgage of the plaintiff; the sale of the premises thereunder, and the expiration of the right to redeem from such sale; and asked for an accounting, and that all rents collected for the time prior to the date of her sheriff's deeds be applied in payment of the debt secured by the mortgage to James L. Lombard. The plaintiff avers that the alleged purchase of the judgment by Mrs. Rex was in fact a payment by her husband which had the effect to satisfy the judgment; and that the pretended sale thereunder is void; and denies that Mrs. Rex has any right to rents, as claimed. J. H. Crawford pleads, by way of answer and cross-petition, that the release by James L. Lombard of lots 84 and 85 was executed without authority, fraudulently, and for the purpose of injuring him. He demands judgment against E. J. Bush and Kate B. Bush for the amount due on his notes; asks that the release be set aside; and that the

mortgage be foreclosed, and the premises sold to satisfy his notes; and, if the release is found to be valid, he asks judgment against the plaintiff and James L. Lombard for the value of the released property. He also asks for an accounting of the rents collected by the trustee.

Before the commencement of the action just described, in May, 1889, Crawford had commenced an action to recover the amount due on the notes owned by him, and for the foreclosure of the mortgage given to Lombard to secure them. He made Edwin J. and Kate B. Bush, A. P. Stephens, James L. Lombard, C. S. and S. E. Rex, B. Lombard, Jr., Emma M. Hibbard, and others who need not be named parties defendant, and demanded judgment against the makers of the notes, including Stephens; asked that the release executed by James L. Lombard be canceled, and the mortgage be foreclosed on the mortgaged property, including lots 84 and 85, and that the property be sold to pay the mortgage debt. He also asks an accounting for the rents, and, in case the release is found to be valid, that he have judgment against James L. Lombard and the Anglo-American Land, Mortgage & Agency Company for the value of the lots released.

James L. Lombard filed an answer to the petition of Crawford, in which he denied liability, and averred that the lots released were not of greater value than the twenty-five hundred dollars he received for releasing them; that he applied the money so received in paying the notes, which, by virtue of his agreement with Crawford, were made senior to the notes held by him; that the mortgaged property remaining after lots 84 and 85 were released was sufficient to satisfy in full the notes secured by the mortgage. The answer of Lombard also alleged that he sold and transferred to the Anglo-American Land, Mortgage & Agency Company in May, 1884, the two notes upon which its action is brought. Emma M. Hibbard filed an answer in which she alleged

that she purchased lots 84 and 85 in good faith, without notice that Crawford was the owner of the notes on which he seeks to recover, and that she believed that James L. Lombard owned all the notes secured by the mortgage when she purchased, and that she relied upon the release. The defendant Stephens filed an answer in which he alleged that he was released as surety on the notes held by Crawford, for the reason that the mortgage security given therefor had, by virtue of the assignment of the notes to Crawford, been waived, and the proceeds of the property applied to the payment of other notes, upon which he was not liable as surety or otherwise.

In September, 1889, the court ordered that the two causes be consolidated and tried as one. On final hearing the court found that the assignment of the judgment by B. Lombard, Jr., to Mrs. Rex was valid, and that she acquired title and the right of possession of the property held by the trustee by virtue of the sheriff's deeds to her, and that she was entitled to the rents and profits arising from the property from the sixth day of August, 1889. The court also found that the rents collected by the trustee Patt had been duly applied in payment of the notes secured by the mortgage in question, excepting three hundred and ninety dollars, which was appropriated January 28, 1888, in a manner not authorized by the agreement which created the trust, and that it should be deducted from the amount due on the notes. Judgment was rendered in favor of the Anglo-American Land, Mortgage & Agency Company against Edwin J. Bush and Kate B. Bush for eighty-five hundred and seventy-six dollars and eighty-five cents, an attorney's fee of one hundred and twenty-five dollars and seventy-five cents, and costs, and for the foreclosure of the mortgage. It was also adjudged that Mrs. Rex was entitled to the possession of the property described in her sheriff's deeds from the sixth day of August, 1889, until her

right of redemption from the sale under the foreclosure proceedings in favor of the Anglo-American Land, Mortgage & Agency Company, if such a sale is had, shall expire. The court also found that James L. Lombard released lots 84 and 85 from the mortgage in suit, and that Crawford thereby lost his lien on said lots; that they were worth thirty-three hundred dollars when the release was made; and that by reason of such release Crawford was damaged in the sum of eight hundred dollars. Judgment was rendered in favor of Crawford against Edwin J. Bush and Kate B. Bush for twenty-seven hundred and thirteen dollars and ten cents, an attorney's fee of eighty-seven dollars and thirteen cents and costs; and against James L. Lombard for the sum of eight hundred dollars. The mortgage was foreclosed, and a sale of the mortgaged premises in lots 297 and 298 was ordered, subject, however, to the decree in favor of the Anglo-American Land, Mortgage & Agency Company. Execution was to issue against James L. Lombard in case the mortgaged premises did not sell for enough to satisfy the judgments against them. The Anglo-American Land, Mortgage & Agency Company appealed from so much of the judgment as found the amount of indebtedness, and reduced it by the sum of three hundred and ninety dollars, and from so much as adjudged that Mrs. Rex was entitled to the possession of the premises described in her sheriff's deeds, and the rents and profits thereof, from the sixth day of August, 1889, to the expiration of her time for redemption in case of a sale. James L. Lombard appealed from that part of the judgment which adjudged him to be indebted to Crawford in the sum of eight hundred dollars, and provided for an execution against him. After these appeals were taken, Crawford appealed from so much of the judgment as found that he was not entitled to any of the rents collected on lots numbered 297 and 298, and as refused to apply any of the rents upon his notes, and applied them

on the other notes; and from so much as found that Mrs. Rex was entitled to a portion of the rents by virtue of the sheriff's deeds.

I. The appellees, S. E. Rex and C. S. Rex, have filed a motion to dismiss the appeal, so far as it concerns them, on the ground that the judgment from which it is taken has been performed. In support of the motion, it is shown that the judgment in favor of the Anglo-American Land, Mortgage & Agency Company was satisfied on the eighth day of February, 1890, through a sale of the mortgaged premises. It is also shown that the mortgages in favor of the Edinburg Lombard Investment Company and B. Lombard, Jr., have been foreclosed, and the mortgaged premises sold to satisfy the mortgages secured, and that the judgments have been fully satisfied. All the judgments were satisfied before the appeals in this case were taken. In resistance of the motion to dismiss, the Anglo-American Land, Mortgage & Agency Company claims that the amount of its judgment was more than four hundred dollars less than it was entitled to recover; that the sheriff's deeds to Mrs. Rex were void, and gave to her no right to the possession of the property nor to the rents thereof; that the agreement by which the rents from the mortgaged property were to be used in part to insure the property, and to pay the taxes thereon, has not been fully carried out; that said appellant has been compelled to pay money for insurance since its judgment was rendered; and that the property has been sold for taxes, and that a considerable sum of money will be required to redeem from the tax sales. It is the general rule that a party who enforces a judgment in his favor cannot thereafter appeal from it. *Reichelt v. Seal,* 76 Iowa, 276, and cases therein cited; *Root v. Heil,* 78 Iowa, 437. In some cases it has been held that, when a party recovers as to a part of his claim, he may receive payment therefor without waiving his right to

*1. Appeal: waiver of: acceptance of payment of judgment.*

appeal. Thus in *Dudman v. Earl*, 49 Iowa, 37, the plaintiff recovered the amount on a promissory note, with interest to a certain date, but he was refused interest for the time subsequent to that date, and judgment was rendered against him for costs. The amount of the judgment against the defendants was paid to the clerk, and received by the plaintiff. It was held that the right of appeal was not thereby waived. In *Upton Mfg. Co. v. Huiske*, 69 Iowa, 558, the plaintiff sought to recover the amount of two promissory notes. The defendant admitted indebtedness on one of them, and judgment was entered for the amount admitted. The judgment was paid, and the money received by the plaintiff, but it was held that he did not waive his right of appeal by receiving it. In neither of these cases was the right of the plaintiff to recover the amount he received in any manner questioned, and he could not, in any event, have recovered less. The money was paid into court, and it was only just that the plaintiff should be entitled to receive it without waiving his right of appeal. The payment was made without affirmative action on his part, and was effectual to stop interest on the amount paid. Had the plaintiff not been permitted to receive the money, he would have lost its use without fault on his part. But in this case the proper appropriation of the rents collected by the trustee, and the right to use the rents which accrued after the sixth day of August, 1889, to the payment for the indebtedness secured by the mortgage, were important issues in the trial of the cause. The amount for which the Anglo-American Land, Mortgage & Agency Company was entitled to a decree of foreclosure depended to some extent upon the credits which should be given for the rents collected by the trustee. Therefore, when that company voluntarily caused execution to be issued and the mortgaged premises sold for an amount which fully satisfied its judgment, it waived its right to further contest the correctness of the amount recovered. The

fact that the agreement which created the trust has not been fully carried out by keeping the property insured and by paying the taxes does not alter the case. All matters of that kind, which arose prior to the rendition of the judgment should have been included in the adjudication, and, if they have arisen since, they cannot be settled in this court. We conclude that the motion to dismiss, so far as it relates to the appeal of the Anglo-American Land, Mortgage & Agency Company, must be sustained.

II. The appellee Crawford contends that the court erred in not applying in payment of his notes any portion of the rents received for the mortgaged property, and in finding that Mrs. Rex was entitled by virtue of her sheriff's deeds to the rents which accrued after August 6, 1889. The sufficiency of the assignment of the judgment in favor of B. Lombard, Jr., to Mrs. Rex is assailed. The evidence shows that C. S. Rex was surety only on the indebtedness for which the judgment was rendered. He paid to the clerk the amount of money necessary to satisfy the judgment, but did not do so with the intent to pay the judgment, but for the purpose of procuring an assignment of it to his wife. Lombard executed an assignment as requested, hence knew that the judgment was not paid, but assigned. C. S. Rex advanced the money for his wife to use in purchasing the judgment, probably to protect himself as surety. But, if that was the motive for his action, since this is a proceeding in equity, and all parties in interest are in court, his interests will be fully protected. *Searing v. Berry*, 58 Iowa, 23. It is our opinion that the assignment of the judgment should be sustained, and that the sheriff's deeds must be treated as valid.

III. But the judgment which was assigned to Mrs. Rex was not rendered on an indebtedness secured by

*[margin note: 2. JUDGMENT: assignment in favor of surety: validity.]*

mortgage on the premises in controversy.
No lien, therefore, was created on account
of the debt until the judgment was ren-
dered on the sixth day of March, 1888.
Before that date, on the twenty-fifth day of February,
1887, the agreement under which the premises in con-
troversy were transferred to a trustee was made, and
soon after recorded.   That was made by parties compe-
tent to contract, and was effectual to transfer the pos-
sesion of the property therein named to the trustee,
and to pledge the rents for the purposes specified.   So
far as it was designed for the benefit of the owners of
the mortgage indebtedness, it was not as effectual as
though the trust had been created by an instrument in
the form of a mortgage.   It could not have been
defeated by any subsequent incumbrance, whether
created by a mortgage executed by Bush or by a judg-
ment against him.   It was, in effect, what it was
designed to be,—additional security for the indebted-
ness secured by the mortgages.

3. ——: assign-
ment of rents
and profits in
land: priority
of liens.

The conclusion we have reached is not in conflict
with the rule announced in *Nelson v. Larsen*, 78 Iowa,
25, but is in entire harmony with it.   The case of
*Patton v. Varga*, 75 Iowa, 368, is relied upon as being in
point, but a comparison of the facts in the two cases
discloses material differences.   In the Patton case no
interest in the realty was transferred to the plaintiff by
the instrument then in question, but merely the right
to collect the rents and lease the property for an indefi-
nite period.   The plaintiff was made the agent of the
mortgagor, and had no right to rent the property or
collect the rent, as one having title.   But in this case
the agreement creating the trust recites that the owner
of the property "assigns, turns over and transfers to
the party of the second part, as trustee for the party of
the third part, all his right, title and interest in and
to the possession and rents" of the property in ques-
tion, for the purpose, among others, "of protecting the

mortgage security, and decreasing the amount of the mortgages against said property." It did not, as claimed by Mrs. Rex, pledge the rents only to May 1, 1889, when the time during which Lombard agreed to forbear suit expired, but "until the whole amount of the principal and interest of the notes secured by" the mortgages specified "are paid in full." The trustee was to take possession of the premises, collect the rents, make leases for a part at a price fixed, and for the remainder at a price not less than that fixed, without the consent of Lombard. The trustee was more than a mere agent for the mortgagor. He acted for him, and also for the owners of the debts specified in the agreement, and his duties could not have been terminated by the mortgagor without the consent of the other parties in interest. So far as the record submitted shows, the consideration of the agreement was sufficient, and the agreement itself was valid and effectual as against the holder of the judgment in favor of B. Lombard, Jr. It follows from what we have said that Mrs. Rex acquired no right to the possession of the premises in controversy, nor to the rents thereof, as against the mortgagees and their assigns, and that she cannot successfully assert such right until their claims have been discharged. Therefore her claim is junior to that of Crawford, and the district court erred in holding that she was entitled to the possession and the rents before his demand is satisfied.

IV. Claim is made on the part of Crawford that the rent collected by the trustee, and applied in paying notes transferred to the Anglo-American Land, Mortgage & Agency Company, should have been used to pay the notes which he holds. This claim is based upon the fact that the agreement which created the trust provided that the money available for the payment of the notes which it was designed to secure should be applied by the trustee "by paying off the notes which mature first under the terms of the

said mortgages." But this agreement was made before the notes owned by Crawford were assigned to him, and he acquired title to them under an agreement by which they were made junior to the other notes secured by the same mortgage. We think they were so made junior, not only for the purposes of the mortgage security, but also for the purposes of the agreement, which pledged the rents of the property in question for the payment of the notes, and that Crawford cannot be heard to complain of the arrangement under which he purchased the notes.

V. Some claim is made that Crawford has never taken an appeal. His additional abstract shows that

**5. PRACTICE in supreme court: disputing record.** an appeal was taken in the manner provided by law, and is not denied, except in argument. That such a denial in argument alone is not sufficient has been frequently determined. See *Farmer v. Sasseen*, 63 Iowa, 111; *Weaver v. Kintzley*, 58 Iowa, 194. We must presume that the appeal was taken as stated in the abstract. The same rule applies to other averments contained in additional abstracts, denied only in argument.

VI. The appellant Lombard complains of the judgment for eight hundred dollars against him and in

**6. MORTGAGE: release: damage to holder of notes.** favor of Crawford. It appears that Bush had effected a sale of lots 84 and 85, which comprised his homestead, to Emma M. Hibbard for the sum of three thousand, three hundred dollars, and, to secure a release of the lots from the mortgage, agreed to pay to. Lombard two thousand, five hundred dollars. Lombard accepted the money, applied it in paying the mortgage debt, and in December, 1888, executed a release in the form of a quitclaim deed of the lots. Some question is made as to the sufficiency of the quitclaim deed to release more than the interest which Lombard then held in the mortgaged premises. But an inspection of the instrument itself, and the evidence in regard to the negotiations

which led to its execution, leave no doubt that it was designed to release fully the lots named from the effects of the mortgage, and that it was executed without the knowledge or consent of Crawford. Under these circumstances, we do not think Lombard can complain that the instrument is given the force and effect he designed it to have. Crawford was presumptively injured to the extent of the differences between the value of the property released and the amount received for the release, which is eight hundred dollars. E. J. Bush and his wife are insolvent, and the surety Stephens was released by reason of the terms of the assignment of the notes to Crawford, which made them junior to the other notes secured by the mortgage. Crawford is required to exhaust the business property covered by the mortgage and the rents, if any, from all the property which was transferred to the trustee to which he is entitled. If, after that is done, any portion of his judgment remains unpaid, he is entitled to an execution for the amount of the deficit, not exceeding the sum of eight hundred dollars, and interest thereon from the date of the judgment in the district court against James L. Lombard. This adjudication reaches an equitable result, and fully protects Lombard against liability if the property not released, and the rents pledged, prove to be sufficient to satisfy Crawford's judgment.

What we have said disposes of all questions discussed by counsel, which, under the rules applicable to this case, we are required to determine. The causes as consolidated, excepting so far as dismissed, are remanded for further proceedings and a decree in the district court in harmony with this opinion. REVERSED.