SAMUEL ATLEE, *et al.*, Appellees, v. FANNIE BULLARD, *et al.*,
Appellees, AND HERMINGHAUSAN & HERMINGHAUSAN
AND WILSON BULLARD, Appellants.

**Partition:** WIDOW'S SHARE: LIEN OF JUDGMENT: CONVERSION. In an
action to partition land pursuant to the provisions of a will directing a sale and division of the proceeds in equal parts among the widow and children upon the youngest child arriving at majority, none of the parties having claimed an equitable conversion, the share of the widow became subject to the lien of a judgment. The parties having treated the property as real estate it amounted to a reconversion, if any conversion had been effected.

**Principal and Surety:** PURCHASE OF PRINCIPAL'S PROPERTY. Where a judgment is taken against both principal and surety, the surety may purchase the principal's property at an execution sale, though the record of the action disclosed no claim of suretyship.

**Estoppel.** Although, in a partition suit, the holder of a sheriff's deed to a share of the land fails to plead any facts or demand any relief respecting his title, a decree entered after his dismissal as a party defendant, whether with or without consent of the plaintiffs will not estop him from asserting his right to the property.

**Homestead Right:** ASSERTION BY GRANTEE. Where a widow failed to appeal from a decree denying her a homestead interest in land her grantee cannot, in an attempt to defeat a prior execution sale of the land, assert that she had such an interest.

**Estoppel.** Where a surety purchased his principal's interest in land but impliedly consented to accept reimbursement in satisfaction of his claim, and other claimants relied thereon, he was estopped to thereafter claim the entire interest.

**Liens:** PRIORITY. Judgment liens existing at the commencement of a partition suit against one of the shares are entitled to preference over the lien of attorneys for services rendered in the case adverse to such lien holders.

*Appeal from Lee District Court.*—Hon. H. BANK, Judge.
THURSDAY, MARCH 10, 1904.

ACTION in equity for partition of real estate. The opinion states the facts.—*Reversed.*

*Herminghausen & Herminghausen, pro se.*

*Watson & Weber* for appellant Wilson Bullard.

*T. H. Johnson* and *T. B. Snyder* for appellant George Marshall.

*Casey & Stewart* for appellees.

WEAVER, J.—A. J. Bullard, of Lee county, Iowa, died testate in the year 1884. By his will, which was duly probated, the widow, the defendant Fannie Bullard, was given the use of the lands of which the testator died seised, until the youngest daughter, then about four years old, should attain her majority, at which time the land was to be sold and the proceeds equally divided between the widow and eight children, each taking a one-ninth part. The widow elected to take under the will, and continued to occupy and use the land. In the course of a few years she became involved in debt, and allowed the land to become burdened with delinquent taxes, for the payment of which she borrowed a sum of money from the German-American Bank, the obligation thus assumed being witnessed by a joint promissory note signed by Mrs. Bullard and Wilson Bullard, the latter being in fact a surety only. This note was placed in judgment against both makers on June 6, 1893. A year later another judgment, in favor of George Marshall, was rendered against Mrs. Bullard alone. These judgments became liens, in the order named, upon the real estate, if any, of Mrs. Bullard in said county. Thereafter, under execution issued upon the first judgment, the sheriff sold the interest of the said Fannie Bullard in the lands of which her husband died seised, Wilson Bullard being the purchaser at said sale. The amount

bid and paid by the latter was the full amount due on said judgment, with interest and costs. No redemption being made during the year following the sale, the sheriff executed and delivered his deed for the property to Wilson Bullard, under date of February 15, 1897. After the youngest daughter of the testator had reached her majority, Samuel Atlee, the grantee of three of the devisees under the will, united with two of the daughters of the testator in bringing this action in partition, making the widow and the other children parties defendant. Wilson Bullard was also named as a defendant in said proceedings, but, before the entry of the decree confirming the shares of the parties in the land, the plaintiffs dismissed their action as against him.

It is the claim of Wilson Bullard—and his claim has support in the evidence—that the dismissal of the action against him was in pursuance of an agreement in open court, with the acquiescence of all parties, that his rights should not thereby be prejudiced. In view of the entire record and conceded circumstances, we are led to conclude that Wilson Bullard, whom we assume to have been a family relative, did not care to insist upon an absolute title under his sheriff's deed, but was content to be assured of the repayment of the money he had expended as surety for Fannie Bullard and it was the understanding that his claim if established, should be considered in the nature of a lien upon the interest of Fannie Bullard in the land, and be provided for as such in the distribution of the proceeds of the sale. In other words, it seems to have been thought that his right, if any, could be determined and protected under the statutory provision for the adjustment and satisfaction of liens in partition cases. Code, sections 4247-4249. This conclusion is strengthened by the further fact that none of the several persons holding or claiming liens were made parties except as they, including Wilson Bullard, were subsequently brought in by notice from the referees acting under the statute above referred to. It is probable, however, that counsel for Fannie Bullard did not thereby intend to concede the existence of any right in Wilson

Bullard to share in the proceeds of the sale, but at all time intended to contest such right upon the grounds hereinafter more fully considered.

After the dismissal of Wilson Bullard as a party to the proceedings, a decree was entered by the court, which, among other things found the defendant Fannie Bullard to be the owner in fee simple of a one-ninth part of the land. Said decree also provided for the appointment of a commissioner to ascertain and make report of "all incumbrances, if any exist by mortgage, judgment, or otherwise, against the said realty." A report made in pursuance of this order disclosed the judgment in favor of the German-American Bank, and the sale and deed thereunder to Wilson Bullard. It also disclosed a deed of conveyance made September 21, 1900 (after the commencement of this suit), by Fannie Bullard to her attorneys, Herminghausen & Herminghausen, purporting to convey to them all her right, title, and interest in the estate, real and personal, of Andrew J. Bullard. On the same date said attorneys, with D. F. Miller, who was associated with them in said cause, entered upon the combination docket of the trial court a notice or claim of an attorney's lien in the sum of $500, "against the rights and interests of said Fannie Bullard involved in said action."

Sale of the land by the referees having been made, there remained, after paying costs and expenses, an unexpended balance, the one-ninth of which, $1,538.07, represents the share of the widow under the will, and constitutes the fund about which this controversy is waged. The rival claims are as follows:. (1) Wilson Bullard sets up the history of his claim as above indicated, and asks to have the entire fund awarded to him as the owner under the sheriff's deed; or, if this cannot be done, then that he be adjudged to have a first lien on said fund for the amount paid by him as surety for Fannie Bullard. (2) George Marshall, owner of the second judgment, contends that Wilson Bullard's lien was eliminated by the sheriff's sale, and that, being a codefendant in the judgment, said Wilson Bullard could not take title to the

land under said sale. Upon this theory it is insisted that the lien of the Marshall judgment is entitled to precedence. (3) Herminghausen & Herminghausen claim the entire fund under their deed of September 21, 1900, from Fannie Bullard, and deny that either of the aforesaid judgments ever became a lien on her interest in the land. (5) Herminghausan & Herminghausen and D. F. Miller further contend that, whatever may be the judgment of the court as to the order of precedence in payment of other claims, their alleged attorney's lien should be first satisfied.

The trial court decided that from the fund in dispute the sum of $500 should be first paid in discharge of the claim for attorney's fees; that, next in order, Wilson Bullard be reimbursed for the amount expended by him as surety for Fannie Bullard; and that the remainder be paid to Herminghausen & Herminghausen, as grantees under the deed from said Fannie Bullard. From this order George Marshall, Wilson Bullard, and Herminghausen & Herminghausen severally appeal.

I. We give first attention to the appeal of Herminghausen & Herminghausen. As the order of distribution made by the district court recognized and confirmed the claim of these parties to an attorney's lien, their appeal brings up nothing for our disposal, except the effect to be given to the deed or conveyance to them by Fannie Bullard, September 21, 1900. It is contended that this instrument vested in said grantees the entire property rights, and interest received by Mrs. Bullard under the will of her husband, unincumbered by lien or claim of any kind in favor of Wilson Bullard or George Marshall. It is said in support of this proposition that, the will having directed the sale of the lands, they are to be treated, under the doctrine of equitable conversion, as personal property, and therefore not subject to judgment liens. This contention cannot prevail. If ever available to Fannie Bullard or to her grantees, the claim is put forward too late.

This action was brought to partition real estate. Mrs. Bullard, under the guidance of her counsel, who are also her

grantees, made no claim of an equitable conversion, but, treating the property as real estate, she asked by her answer to have the same partitioned and her share set off to her "in kind." The court by its decree ordered sale and partition of the property as real estate, and confirmed to the widow and to each of the children and their grantees a title in fee simple to their undivided shares in the land. It follows, of necessity, that if Mrs. Bullard held a fee-simple title to a one-ninth part of the land (and the decree to that effect had not been appealed from), or even if her title was merely of an equitable character, then, under the provisions of our statute, the lien of the judgments against her attached to such interest, and could not be defeated by her subsequent conveyance. It may be further remarked that property subjected to equitable conversion may be reconverted by the consent or acquiescence of all the parties directly interested in the subject-matter. *Mellen v. Mellen,* 139 N. Y. 210 (34 N. E. Rep. 925); *Craig v. Leslie,* 3 Wheat. 563 (4 L. Ed. 460); *Fluke v. Fluke's Ex'rs,* 16 N. J. Eq. 478; *Cropley v. Cooper,* 19 Wall. 167 (22 L. Ed. 109); *Beadle v. Beadle* (C. C.) 40 Fed Rep. 318; *Mandlebaum v. M'cDonell,* 29 Mich. 86 (18 Am. Rep. 61).

*[margin note: 1. Widow's share: lien of judgment: conversion:]*

The parties to this action, being all who have any right to claim under the will of the testator, having elected to treat the property as real estate instead of personalty, must be held to have effected a reconversion, if, indeed, an equitable conversion ever took place. We must therefore hold that the judgment in favor of the German-American Bank and George Marshall became liens upon the interest or share of Fannie Bullard in said lands.

It is said, however, in avoidance of the claim of Wilson Bullard, that the judgment against him and Fannie Bullard being joint, and no claim of his suretyship having been asserted or made of record in that action, he must be treated as a principal debtor; and that, as such, his purchase of Mrs. Bullard's land at

*[margin note: 2. Principal and surety: purchase of principals property.]*

sheriff's sale operated simply as a payment extinguishing the
judgment lien, and gave him no right to receive a sheriff's
deed, and no recourse on the property, even though he was in
fact a mere surety for his codefendant. This claim is also
asserted and relied upon by the appellant George Marshall.
In our opinion, the omission of Wilson Bullard to plead his
suretyship in the action brought by the bank did not deprive
him of any right he may have had against his principal and
co-defendant Fannie Bullard. Probably it did serve to con-
clusively fix his liability as a principal debtor, so far as the
bank is concerned; but as between him and his codefendant
it did not estop him from thereafter asserting his true rela-
tion to the debt, or from availing himself of the remedies pro-
vided by law or equity for the protection of a surety who
pays the debt of his principal. *Hill v. King,* 48 Ohio, 75
(26 N. E. Rep. 988.)

Looking, then, to the conceded fact that Wilson Bullard
was a surety only, he was justifiably interested in having the
debt paid so far as possible by his principal, or by the sale of
her property; and we know of no rule by which, when her
property was levied upon and offered for sale in satisfaction
of the judgment, he could not purchase and hold it by as good
title as if he were an entire stranger. The principle does not
differ essentially from that applied in *Bleckman v. Butler,*
77 Iowa, 128. In that case a judgment was rendered
against a mother and son, and land of the son was
sold thereunder. The mother procured a third person
to take an assignment of the certificate of sale in her in-
terest. A subsequent lienholder insisted that this action
upon part of the mother operated as a payment of the judg-
ment and extinguished the lien; but, it appearing that she
was simply a surety for the son, we there said: "While she
was a party to the judgment, she was such as surety for her
son. This relation would authorize her to acquire the judg
ment and to retain it unsatisfied for her own protection. The
relation as mother prompted her to aid the son, and in doing
this she could acquire the judgment, and the payment for

that purpose would not satisfy and discharge it." So, also, it was held in *Anglo-Am. Co. v. Bush*, 84 Iowa, 283, that a judgment debtor who is in fact a surety for a codefendant may pay the amount of the judgment, and take an assignment thereof to his wife, without losing his equitable right to the protection of the judgment lien upon the property of the principal debtor. Having reached the conclusion that Wilson Bullard's relation to the judgment debt was not such as to forbid his becoming the purchaser of Fannie Bullard's property at the sheriff's sale, it is unnecessary to consider what would be his rights in the premises were we to treat such purchase as a mere payment of the judgment. But see *Searing v. Berry*, 58 Iowa, 20; *Johnson v. Belden*, 49 Iowa, 302; *Braught v. Griffith*, 16 Iowa, 26; *McArthur v. Martin*, 23 Minn. 74; *Torp v. Gulseth*, 37 Minn. 135 (33 N. W. Rep. 550); *Hill v. King, supra*.

The right of the surety to purchase the property at sheriff's sale being affirmed, the sheriff's deed to him, cannot be ignored in this partition, unless he has become in some manner estopped to rely upon it. We find no such estoppel. His dismissal as a party defendant was the voluntary act of the plaintiffs, and certainly they can claim no advantage by it. None of his codefendants (among whom was Fannie Bullard, under whom Herminghausen & Herminghausen claim) had, by cross-petition or otherwise, asked any relief against him and none of them, so far as the record shows, objected to such dismissal. Nor would a mere objection to his dismissal place such parties in any better position, where they neglect to plead any fact or demand any relief in reference to his alleged lien or title. As a necessary consequence, the decree entered after Wilson Bullard ceased to be a party cannot be held an adjudication estopping him from asserting his right in the property.

It is further urged that, when finally brought into the case after the entry of the decree, he claims merely a lien and not title. We must admit that the pleadings manifest some uncertainty in the pleader as to the extent of his rights, and

at times he seems to claim a lien only, and again to assert full ownership; but he does set out quite fully what he claims to be the facts, and asks generally for such relief as the court may find him entitled to. This we regard sufficient to enable the court to administer such relief as equity demands in the premises. *Anglo-Am. Co. v. Bush,* 84 Iowa, 283.

It is finally urged by these appellants that if we are to consider the right obtained by Mrs. Bullard under the will of her husband as title to real estate, then it is to be protected 4. HOMESTEAD as a homestead, and is not subject to judgment right: asser- liens. It is enough to say upon this point that tion by grantee. she pleaded her alleged homestead rights in the main action, and it was there found and decreed that she had no such right in the premises. From that decree she has not appealed. In our judgment, therefore, whatever right Herminghausen & Herminghausen obtained under the deed from Fannie Bullard, the same was and is subject to the rights of Wilson Bullard and George Marshall as prior lienholders.

II. The foregoing discussion disposes of several of the questions raised by the appeal of Wilson Bullard. Under his sheriff's deed he was the holder of the legal title to the entire 5. ESTOPPEL. interest theretofore held in the land by Fannie Bullard. It was competent, however, for him to hold such title as security for his reimbursement, and give to Mrs. Bullard any profit she might derive from the land after the satis· faction of his claim, and this, we think, is the effect which in equity should be given to his conduct in the transaction. But the fact that he was content to accept less than the full measure of his legal rights, and leave the margin in the property for the benefit of the widow, is something of which neither she nor her creditors or grantees should be heard to complain. On the other hand, having agreed, impliedly at least, to accept reimbursement in full satisfaction of his claim, he should not now, when others have acted upon such concession, be permitted to withdraw it, or to insist upon receiving the entire fund. The extent of his equity is to be awarded the first lien upon such fund for the amount paid by him in the

purchase of the land at sheriff's sale, with interest at the legal rate. The matter of the alleged attorney's lien will be disposed of in connection with the appeal of George Marshall.

III. It follows from the conclusions already announced that the appellant George Marshall obtained a lien on the land for the payment of his judgment, superior to all other claims except that of Wilson Bullard; and as the purchase of the land by the latter at sheriff's sale under the prior judgment was treated by him simply as a method of securing the payment of his claim, leaving the equitable title in Fannie Bullard, the lien of the Marshall judgment was not eliminated, but continued to attach to such equitable interest of the judgment defendant. As we have already noted, the conveyance to Herminghausen & Herminghausen was subsequent to the origin of this lien, and must be held subject thereto.

We thus have left the simple question whether the alleged lien for attorney's fees is entitled to precedence over the claims of Wilson Bullard and George Marshall, or either of them. It is contended, in support of the attorney's lien, that there was a concession by the parties, or by some of them, in the lower court, that such lien should be given first place. The record does not seem to sustain this contention. There was a concession by counsel for George Marshall that the attorney's fee claimed was reasonable in amount, and proof thereof was waived, but we find no consent that such claim should be accorded a first lien upon the fund. There is no rule of law or equity which, in the absence of an agreement, will justify the court in giving such precedence. The judgment liens were in existence when the suit was begun. Together they aggregated more than the entire value of Mrs. Bullard's interest in the land. It would be most inequitable to say that the judgment debtor may still further deplete the security of such creditors by drawing therefrom payment for the services of counsel in an unsuccessful attempt by her to defeat their liens entirely. These counsel were employed by Mrs. Bullard to protect her rights

6. LIENS: priority.

and preserve her property. Their services were not in the interest of, but in hostility to, the lienholders. If the entire interest of their client in the property is exhausted in the payment of prior liens, then there is nothing left to which an attorney's lien can attach. Indeed, it is very doubtful if in an action of this kind the statute has provided for any attorney's lien upon moneys or property not coming into actual possession of the attorneys claiming such liens. See Code, section 321.

As between the several parties appealing, we may therefore state their rights in the fund in controversy as follows:

(1) Wilson Bullard is to be repaid the amount expended by him in the purchase of the land at sheriff's sale, with interest as above indicated.

(2) George Marshall is next to be paid the amount of the judgment in his favor against Fannie Bullard.

(3) After the satisfaction of the aforesaid claims, the remainder, if any, will be paid to Herminghausen & Herminghausen, as grantees of Fannie Bullard.

Upon the appeal of George Marshall, the decree of the district court must be reversed. On the appeal of Wilson Bullard, said decree will be so far modified as to make his claim the first lien upon said fund. On the appeal of Herminghausen & Herminghausen, said decree is affirmed.

The cause will be remanded to the district court for the entry of a decree in harmony with the views here expressed; the costs of the appeal taxed one-half to Herminghausen & Herminghausen, and one-fourth each to Wilson Bullard and George Marshall.—REVERSED.