ELIZABETH NORRIS et al., Appellees, v. WILLIAM LOYD, Appellee, et al., Appellants.

**WILLS:** Equitable Conversion—Avoidance. Directions in a foreign
1    will to sell Iowa real estate and to divide the proceeds among
named devisees do not, *ipso facto*, under the fiction of equitable
conversion, necessarily and irrevocably fix the status of the
property *as personalty*, and work a transference of the property
*as personalty* to such foreign state, for distribution *as personalty*,
and according to the laws of such foreign state. The devisees
may, by unanimous record agreement, take the land *as land*,
and thereby cause the will to operate thereon *as land*, and ac-
cording to the laws of this state; and this, too, over the protest
of a nondevisee heir, who, under peculiar legal conditions, has
been adjudged by the courts of such foreign state to be entitled
to take a portion of the testator's estate *in spite of and in op-
position to the will.*

PRINCIPLE APPLIED: The will of a resident of California
was duly probated in said state, and later filed in Iowa, and in
the county where testator owned certain land. This will directed
that said Iowa land should be sold, under the approval of the
Iowa court, and the *proceeds* divided among twelve named sons
and daughters, all *sui juris*. Shortly after the death of testa-
tor, said twelve children filed, in the court of the county where
the Iowa land was situated, an election to take the land *as land;*
and the executor and the Iowa court duly approved such elec-
tion. A California statute provided that, if a testator omitted
to provide for a child, such child should take the same share as
he would take, were there no will. After the will was probated,
one Hicks, who was not a devisee under the will, brought an ac-
tion in the courts of California, claiming to be the illegitimate
child of said testator, and prayed for a decree establishing his
rights. Said twelve children were made parties to this action.
The California court decreed that Hicks was such child, and
that he was entitled to a certain fractional part of testator's es-
tate *"wherever situated."* Later, the twelve children brought
partition proceedings for the division of the Iowa land. Hicks

intervened, claiming: (a) That he was, under the California decree, the owner of his fractional part of the land; and (b) that the said twelve devisees had no right to reconvert the fictitious proceeds of the Iowa land *into land;* that the land must be sold, and the proceeds—personalty—transferred to California for distribution.

*Held:* 1. The devisees were the sole owners of the Iowa land, and possessed the absolute right to take the land *as land,* and thereby defeat a sale thereof.

2. The California court was wholly without jurisdiction to adjudicate the title to the Iowa land.

WILLS: Disinheriting Bastard. Principle recognized that a duly acknowledged illegitimate child, as well as a legitimate child, may be disinherited.

CONVERSION: Avoidance by Reconversion. The fiction of equitable conversion of real estate may be avoided by the agreement of the sole beneficiaries to take the land *as land*—the gift being immediate, and not in trust.

PRINCIPLE APPLIED: See No. 1.

JUDGMENT: Foreign Judgment In Re Title to Real Estate. An adjudication by a foreign court of the ownership of Iowa real estate is entitled to no "faith and credit" in the courts of Iowa, even though all parties in interest were properly before such foreign court when it rendered such adjudication.

PRINCIPLE APPLIED: See No. 1.

*Appeal from Monona District Court.*—GEORGE JEPSON, Judge.

JUNE 24, 1918.

SUIT in partition of lands owned, at the time of his death, by George E. Loyd. All the parties save one are the widow and devisees under the will of Loyd. The other party is Charles Hicks, who intervened in the action, claiming to be the illegitimate son of the testator, and to be duly recognized by the testator as such. Hicks proved an adjudication in the state of California of his paternity, and due acknowledgment thereof. He was not, however, a devisee under the will. The trial court confirmed the title of the property pur-

suant to the terms of the will, and awarded it to the devisees therein and to the widow. The intervening defendant has appealed.—*Affirmed.*

*George H. Clark* and *E. A. Burgess,* for appellant.

*S. A. Frick, Miles W. Newby,* and *M. F. Harrington,* for appellees.

Evans, J.—The property in question consists of 800 acres of land in Monona County. The devisees, parties hereto, are the twelve legitimate children of the testator, George

1. WILLS: equitable conversion: avoidance.

E. Loyd. At the time of his death, and for a few years prior thereto, Loyd was a resident of California. The original probate of his will and the administration of his personal estate were there had. The question of the paternity of Hicks and of the due acknowledgement thereof was litigated in California, in a proceeding wherein the widow and all the legitimate heirs were parties. The finding of fact in that proceeding was that George E. Loyd was the father of Hicks, and that he had duly acknowledged the paternity in writing. The same adjudication held, as a conclusion of law, that Hicks was entitled to take two thirty-ninths of the estate of George E. Loyd, "wherever situated." This conclusion of law was predicated upon a California statute, which purports to protect the children of a testator against omissions in his will. Under such statute, if a testator omits to provide in his will for any of his children, such child has the same share in the estate of the testator as if he had died intestate. No provision was made for Hicks in the will of the testator.

The will of the testator directed the executors to sell the Iowa land in question, and to divide the proceeds among his twelve children, naming them. Shortly after the death of the testator, the widow and the twelve children, being all

*sui juris,* elected and mutually agreed to take and hold the land in question as land. They so notified the executors, who assented thereto. Their election was also filed in the district court of Monona County and presented to that court for approval, and was approved. Later, this action of partition was brought. No controversy is presented, as between the widow and the twelve devisees. The only controversy is between this family group, on the one hand, and Charles Hicks, on the other. The contention of Hicks may be stated in two general propositions:

(1)    That the adjudication in California was binding upon all the parties thereto everywhere; and that the full, faith and credit clause of the Constitution of the United States requires that it be recognized by the courts of this state in the devolution of this title.

(2)    That the provision of the will which directed the executors to sell this real estate was an equitable conversion thereof; that it thereby became personalty, and attached to the testator at his domicile, and came within the jurisdiction of the California courts; that the devisees had no power to work a reconversion into land without the consent of *all* parties in interest, including himself.

The contention for the devisees may also be stated in two general propositions:

(1)    That, though the will worked an equitable conversion of the land into personalty, the election of all the devisees before actual conversion, worked a reconversion into land, and terminated the power of the executors to convey the title; that the question of conversion of the land concerns no one except a devisee, or one claiming under a devisee; that Hicks took nothing under the will, but claimed in hostility thereto; that, under Iowa law, the devise of the real estate was valid, even as against an heir.

(2)    That there was no jurisdiction in the California

court to adjudicate the question of title to real estate in Iowa.

These general propositions have some ramifications of detail. After Hicks obtained an adjudication of his paternity, he brought a proceeding against the executors to compel them to sell the land in question, and to bring the proceeds before the California court. As an alternative, he asked the removal of the executors. In this proceeding, he was again successful, in the *nisi prius* court. This adjudication was also in force and effect, pending, however, on appeal to the Supreme Court of California, at the time of the trial of the present suit in the district court of Monona County. This status continued until after the first arguments were filed in this court. The arguments, therefore, have been built, to some extent, upon the effect of that adjudication. Later, however, the Supreme Court of California handed down a reversing opinion on that appeal, and the contentions of the appellant herein, based on that adjudication, have necessarily fallen with it. In the consideration of the case, it will simplify the discussion if we consider first what the rights of the parties would be as to this land under our law, disregarding, for the moment, the California adjudication, but assuming the fact of paternity and acknowledgment thereof to be as found by the California court. We can then turn our attention upon the qualifying effect, if any, of such alleged adjudication.

I. The testator disposed of the property in question by his will. This is so whether the will worked an equitable conversion or not. Under our law, he had a right to so dispose of it, to the exclusion of any legitimate 2. WILLS: disin-  child. He had the same right to dispose of heriting bastard.  it to the exclusion of a duly acknowledged illegitimate child. *Lepper v. Knox*, 179 Iowa 419. The land having been properly disposed of by will, Hicks acquired no interest in it, either as heir of the testator or as devisee

under his will. While the will stands, the only persons interested in the land are the widow and the devisees, and such as may claim under them.

Assuming that the will, in the first instance, worked an equitable conversion of the land into personalty; did the land thereby lose its situs, and did the title thereto escape its subjection to Iowa law? The will provided that the executors should sell the property, with the approval of the district court of Monona County. An equitable conversion is a legal fiction, and is simply anticipatory of an actual conversion. There could be no actual conversion without a transfer of the title, and there could be no legal transfer of the title, except in pursuance of Iowa law. The doctrine of equitable conversion by will is not usually, if ever, applied in hostility to the devisee. It is well settled by authority that, though a will work an equitable conversion of land, the beneficiaries of the devise may, at any time before actual conversion, work a reconversion into land, by so electing and agreeing among themselves. That question was before this court in *Boland v. Tiernay,* 118 Iowa 59, and again in *Atlee v. Bullard,* 123 Iowa 274, 279. In the latter case, it was said:

3. CONVERSION: avoidance by reconversion.

"It may be further remarked that property subjected to equitable conversion may be reconverted by the consent or acquiescence of all the parties directly interested in the subject-matter. *Mellen v. Mellen,* 139 N. Y. 210 (34 N. E. 925) ; *Craig v. Leslie,* 3 Wheat. 563 (4 L. Ed. 563) ; *Fluke v. Fluke's Exrs.,* 16 N. J. Eq. 478; *Cropley v. Cooper,* 19 Wall. 167 (22 L. Ed. 109) ; *Beadle v. Beadle,* (C. C.) 40 Fed. 318; *Madlebaum v. McConnell,* 29 Mich. 86 (18 Am. Rep. 61). The parties to this action, being all who have any right to claim under the will of the testator, having elected to treat the property as real estate instead of personalty, must be held

to have effected a reconversion, if, indeed, an equitable conversion ever took place."

A few excerpts from other jurisdictions will indicate the uniformity of authority upon this question. In *Griffith v. Witten*, 252 Mo. 627, 646 (161 S. W. 708), it is said:

"The 'equitable conversion' of the real estate into money continues until such time as there is an actual conversion, or until by election there has been a 'reconversion.' This reconversion may take place at any time prior to the actual conversion. The constructive conversion, or 'equitable conversion,' is as of date of the will or death of testator; the actual conversion is as of the date of the sale of the real estate. [*Nall v. Nall*, supra, and cases therein cited and reviewed.] As stated in the *Nall* case, the reconversion may take place at any time during the period of constructive conversion, and prior to actual conversion. In the case of adults, there must be an election, but this election may come at any time before actual conversion. In the case of infants, as here, the court of equity may make the election for them, if the necessities of the case so require it, and the interest of the minors would thereby be best subserved. In the instant case, the real beneficiaries are the eight minors. Under the will and the showing made in this case, they would be entitled to all the proceeds of this land, if it were sold. Under such facts, the trial court had the power to elect for them to reconvert the property into land and decree that they so hold it. Upon this theory of the law, the judgment *nisi* is correct."

In *Bank of Ukiah v. Rice*, 143 Cal. 265, it was said:

"The appellants' right to maintain the action, by reason of their relation to the land as the beneficiaries under the sale directed by the decree, is to be determined upon a consideration of different principles. It is a well-settled rule in equity that, where a testator directs land to be sold, and the proceeds thereof to be distributed among certain desig-

nated beneficiaries, such beneficiaries may elect, before the sale has taken place, to take the land instead of its proceeds; and when they have so elected, and sufficiently manifested their election, the authority to sell the land cannot thereafter be exercised by the executor, but is extinguished. The estate is thereby reconverted into real property, and by reason of such reconversion, the relation of the beneficiaries to the land is the same as if it had been directly devised to them. (*Pearson v. Lane,* 17 Ves. 101; *Craig v. Leslie,* 3 Wheat, 563; *Hetzel v. Barber,* 69 N. Y. 1; *Prentice v. Janssen,* 79 N. Y. 478; *Greenland v. Waddell,* 116 N. Y. 234; *Mellen v. Mellen,* 139 N. Y. 210; *Baker v. Copenbarger,* 15 Ill. 103; *Huber v. Donoghue,* 49 N. J. Eq. 125; *Swann v. Garrett,* 71 Ga. 566; *Sears v. Choate,* 146 Mass. 395; Pomeroy's Equity Jurisprudence, Sec. 1175; Chaplin on Express Trusts and Powers, Sec. 691.) This right rests upon the presumption that the power of sale given to the executor was intended for the benefit of the beneficiaries, and upon the principle that, as they are the absolute owners of the entire property in the land, they have the right to direct the disposition to be made of it; and also in consideration of the practical effect of a contrary rule. If they are entitled to the entire proceeds of the sale, they could outbid any other purchaser, and thus indirectly accomplish their desire to retain the land."

In *Mellen v. Mellen,* 139 N. Y. 210 (34 N. E. 925), it was said:

"It is a principle now well settled that where, by a will, money is directed to be laid out in the purchase of land for designated beneficiaries, or land is directed to be sold and the proceeds distributed, it is competent for the parties beneficially interested, provided they are competent and of full age, and the gift is immediate, and not in trust, to elect, before the conversion has actually taken place, to take the money in the one case, and the land in the other, and when

they have so elected, and the election has been made known, the power of the trustee for conversion ceases and becomes extinguished, and he cannot thereafter lawfully proceed to execute the power. This doctrine is founded upon the presumption that such a power is given by the testator for the benefit and convenience of the devisees and legatees, and, unless made so in terms, was not intended to be imperative, so as to prevent the beneficiaries from taking his bounty, except in the precise form in which the property would exist after the conversion."

In the case at bar, there was a complete agreement of all the devisees working the reconversion. Such reconversion was specially approved by the district court of Monona County. There is a claim for the appellant that, at one time, one of the heirs, Mrs. Gent, filed in court a protest, and refused to agree. He contends that this was an election on her part and a finality, and that she could not thereafter agree. The point cannot be sustained. If it could be, as between contesting devisees, it is not available to the appellant, who is not a devisee. But it is quite clear that the right remains to the devisees to reach an agreement for a reconversion at any time before actual conversion. True it is that any devisee could withhold his assent, and thereby defeat a reconversion. Such is not this case.

It must be said, therefore, that these devisees did work a reconversion whereby the title to the land as land vested in them, and whereby the power of the executor to convey the land was terminated. It follows that, under Iowa law, title to this land can only be acquired through or under these devisees. A conveyance by Hicks would convey nothing. An encumbrance by him would encumber nothing. Unless, therefore, the California adjudication is effective, notwithstanding Iowa law, to confer upon him a title or interest therein, decree must go against him.

II. We proceed, therefore, to a consideration of the

effect of the California adjudication.   We are not called up-
on to deal with the effect of a California judgment or decree

*in personam;* nor with the power of a court

4. JUDGMENT:
    foreign judg-
    ment *in re*
    title to real
    estate.

of equity in any state to coerce the parties
before it into the performance of its man-
dates by appropriate processes of contempt
or otherwise; nor even with the power of a court of equity
in a sister state to affect title to land in Iowa indirectly,
through the processes of coercion, by compelling conveyance
thereof.  The question before us at this point is the narrow
one as to whether the full faith and credit clause of the
Constitution requires us to give force and effect to a prior
California decree, in our adjudication of title to Iowa land.
It is doubtless a complete answer to the affirmative on this
question that the California court had no jurisdiction to
enter any decree adjudging the devolution of title to land
in Iowa.

We will not enter into a discussion as to whether the
finding of facts by the California court as to the paternity of
Hicks and the acknowledgment thereof were such an adjudi-
cation of such fact as entitled it to full faith and credit in
every other state.  For the purpose of this case, we shall as-
sume the verity of such fact.  As already indicated, the Cali-
fornia decree not only made this finding of fact, but it de-
clared a conclusion of law as to the effect of this fact upon
the rights of Hicks in the property of the testator.  This legal
conclusion was necessarily predicated on California law.  If
this decree must receive full faith and credit in the courts
of this state, it will necessarily result in applying California
law to the devolution of title to Iowa land.   Indeed, the
question is not fairly open to debate.  If any principle is
firmly established, it is that the law of the state where land
is situated governs its alienation or descent.   To say that
this principle cannot be recognized when a prior adjudica-
tion of title has been had in some other state, is to deny the

principle itself, fundamentally. Judicial precedents on this question are definite and abundant. An instructive case is *Clarke v. Clarke*, 178 U. S. 186. In that case, a conflict of decrees between the South Carolina and Connecticut courts was presented. A resident of South Carolina died testate, leaving real estate both in South Carolina and in Connecticut. The construction of her will, adopted by an appropriate decree in South Carolina, purported to affect the title to the Connecticut land. The Connecticut court construed the will otherwise, and awarded the title to a different devisee. The following excerpt from the opinion in that case is pertinent to the case at bar, and is, in itself, quite a sufficient discussion of the question.

" 'It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances. *United States v. Crosby*, 7 Cranch. 115; *Clark v. Graham*, 6 Wheat. 577; *McGoon v. Scales*, 9 Wall. 23; *Brine v. Ins. Co.*, 96 U. S. 627.' Now, in the case at bar, the courts of Connecticut, construing the will of Mrs. Clarke, have declared that, by the law of Connecticut, land situated in that state, owned by Mrs. Clarke at her decease, continued to be, after her death, real estate for the purpose of devolution of title thereto. The proposition relied on, therefore, is this: although the court of last resort of Connecticut (declaring the law of that state) has held that the real estate in question had not become personal property by virtue of the will of Mrs. Clarke, nevertheless it should have decided to the contrary, because a court of South Carolina had so decreed. This, however, is but to argue that the law declared by the South Carolina court should control the passage by will of land in Connecticut, and therefore is equivalent to denying the correctness of the elementary proposition that the law of Connecticut, where the real estate is situated,

governed, in such a case. It is conceded that, had the will
been presented to the courts of Connecticut in the first in-
stance, and rights been asserted under it, the operative force
of its provisions upon real estate in Connecticut would have
been within the control of such courts. But it is said a dif-
ferent rule must be applied where the will has been presented
to a South Carolina court and a construction has been there
given to it; for, in such a case, not the will, but the decree
of the South Carolina court construing the will, is the
measure of the rights of the parties as to real estate in Con-
necticut. The proposition, when truly comprehended,
amounts but to the contention that the laws of the respective
states controlling the transmission of real property by will,
or in case of intestacy, are operative only so long as there
does not exist in a foreign jurisdiction a judgment or de-
cree which in legal effect has changed the law of the situs
of the real estate. This is but to contend that what cannot
be done directly can be accomplished by indirection, and
that the fundamental principle which gives to a sovereignty
an exclusive jurisdiction over the land within its borders is,
in legal effect, dependent upon the nonexistence of a decree
of a court of another sovereignty, determining the status of
such land. Manifestly, however, an authority cannot be said
to be exclusive, or even to exist at all, where its exercise
may be thus frustrated at any time. These conclusions are
not escaped by saying that it is not the law of Connecticut
which conflicts with the interpretation of the will adopted
by the South Carolina court, but the decision of the court
of Connecticut which does so. In this forum, the local law
of Connecticut as to real estate is the law of that state, as
announced by the court of last resort of that state. As cor-
rectly observed in the course of the opinion delivered by the
Supreme Court of Errors of Connecticut, the question as to
the operative effect of the will of Mrs. Clarke, upon the status
of land situated in Connecticut, was one directly involving

the mode of passing title to lands in that state. This resulted from the fact that, if the will worked a conversion into personalty immediately upon the death of Mrs. Clarke, as contended, it necessarily vested her executor with authority at once to sell and convey the real estate of Connecticut by deed sufficient, under the laws of that state, to transfer title to real estate—a power which was held by the courts of Connecticut not to have been conferred. Had the executor assumed to exercise such a power, however, the validity or invalidity of a conveyance thus executed would have been one exclusively for the courts of Connecticut to determine, just as would have been the question of the sufficiency of the will to vest title. Such being the case, there is no basis for the contention that it was not the exclusive province of the courts of Connecticut to determine, prior to the execution of such a conveyance, whether or not the power to do so existed. As further observed by the Connecticut court, whether Mr. Clarke, as executor and trustee under the will of his wife, had any power, duty, or estate with respect to lands situated in Connecticut, depended upon the laws of that state. The courts of the domicile of Mrs. Clarke could properly be called upon to construe her will, so far as it affected property which was within, or might properly come under, the jurisdiction of those tribunals. If, however, by the law as enforced in Connecticut, land in Connecticut owned by Mrs. Clarke at her decease was real estate for all purposes, despite provisions contained in her will, that land was a subject-matter not directly amenable to the jurisdiction of the court of another state, however much those courts might indirectly affect and operate upon it in controversies where the court, by reason of its jurisdiction over persons, and the nature of the controversy, might coerce the execution of a conveyance of or other instrument encumbering such land. * * * From these conclusions it follows that, because the court of Connecticut applied the law of that state in de-

termining the devolution of title to real estate there situated, thereby no violation of the constitutional requirement that full faith and credit must be given in one state to the judgments and decrees of the courts of another state was brought about as the decree of the South Carolina court, in the particular under consideration, was not entitled to be followed by the courts of Connecticut, by reason of a want of jurisdiction in the court of South Carolina over the particular subject-matter which was sought to be concluded in Connecticut by such decree. *Thompson v. Whitman*, 18 Wall. 457; *Cole v. Cunningham*, 133 U. S. 107; *Grover & Baker Sewing Mach. Co. v. Radcliffe*, 137 U. S. 287; *Simmons v. Saul*, 138 U. S. 439; *Reynolds v. Stockton*, 140 U. S. 254; *Cooper v. Newell*, 173 U. S. 555. *Judgment affirmed."*

There remains to consider the question whether the California decree, being valid *in personam* as against all the parties now before us, had the effect to confer upon Hicks such an *interest* in the real estate, either under the will or in hostility thereto, as to entitle him to insist upon the equitable conversion provided in the will, and to object to the reconversion. It is readily seen that it would be advantageous to Hicks if the devisees had failed to agree to a reconversion; or, more accurately, it would be advantageous to him if an actual conversion of the real estate by the executors had been made, pursuant to the provisions of the will. This would have brought the proceeds of the lands within the jurisdiction of the California court, and within its power of distribution. Because of the relative advantage or disadvantage to him, involved in this question of equitable conversion, it is plausibly argued in his behalf that he has, by force of the California decree, such an *interest* in the subject-matter of the litigation in the Iowa court as entitles him to insist upon the provisions of the will as to equitable conversion. Upon this premise is based the further conclusion that, in order to work a reconversion, the consent of all

parties in interest must be had, and that *his* consent was not
had. Was he a party in interest, in a legal sense? The dev-
isees alone were, *prima facie* at least, if not conclusively,
the parties in interest. The equitable conversion was in-
tended for their benefit, in the first instance. Any one of
them was entitled to claim its benefit, and to object to a re-
conversion. Hicks was not a devisee under the will. He had
no right thereunder. His rights were awarded to him not-
withstanding the will. For the purpose of awarding to him
his right as a child overlooked, the testator was deemed to
be an intestate. If he had been intestate in fact, the Iowa
land would have descended to the legitimate heirs. Hicks
could have raised no question of equitable conversion then.
The enforcement of his rights under California law ignores
the will. His insistence upon enforcing the equitable con-
version is an attempt to enforce the provisions of the will,
which were not made in his behalf. If he has such an in-
terest in the land as entitles him to enforce an equitable con-
version under the will, whereby the proceeds of the land
might be carried to California, and distributed to him there
under the California decree,—if he has such an interest as en-
titles him to demand such a course of procedure,—then he
has an interest which could be and ought to be enforced here
in the state of his residence, and he would have no need at all
of a California distribution. It is because he has no in-
terest here which can be recognized, that it becomes ad-
vantageous and necessary for him to get the proceeds of the
land into the California jurisdiction. If we could recognize
his interest for any purpose, it would be our duty to recog-
nize it to the extent of full equitable relief. We are clear
that he has no right to insist upon the enforcement of the
provisions of the will as to equitable conversion.

That there is no conflict of view between this court and
the California court is indicated by the reversing opinion of
the Supreme Court of California, recently handed down in

this very litigation. The question of conflict of jurisdiction was there presented, as well as the question of the duty of the executors to carry out the provisions of the will as to equitable conversion. The trial court had removed the executors, for alleged failure of duty in that regard. The following excerpts from the opinion of the Supreme Court of that state indicate its views as being in entire harmony with those expressed herein. Quoting therefrom:

"In setting forth the facts touching the asserted conversion and reconversion of this Iowa real estate, it will be assumed that an equitable conversion was worked by virtue of the language of the testator's will; for this assumption, as we shall see, is borne out by the law of Iowa. Nevertheless, it was not an actual conversion, but a constructive conversion merely, and all the devisees of this land,—the 12 children and the widow—all the parties, in short, who were recognized by the will,—elected to take the property in kind. They did this, not only before there was any actual conversions by sale (for such actual conversion has never taken place), but even before Hicks filed his petition, which resulted in the orders and decrees hereunder reviewed. * * * These, then, are the facts, and under them not the slightest doubt can be entertained but that the parties in interest, and owners of this land under the will of the deceased, effectuated, as they had the right to effectuate, a reconversion, which wholly superseded the equitable conversion, which destroyed all power of sale vested in the executors, and left the beneficiaries under the will the owners of the whole legal and equitable title. The law controlling the foregoing statement is, of course, the Iowa law; but the decisions of the Iowa courts leave the matter in no doubt. * * * This reconversion may take place at any time during the period of constructive conversion, and prior to the actual conversion by sale. *Griffith v. Whitten*, supra. It is effected when all the parties beneficially interested in the

property, by some explicit and binding action, direct that no actual conversion shall take place, and elect to take the property in its original form. *Duckworth v. Jordan*, supra. Did all the parties beneficially interested so indicate their election; or is Charles Hicks such a party beneficially interested for whose nonjoinder the reconversion could not, in law or equity, take place? What has previously been said, touching the well-settled doctrine that a pretermitted heir does not take under a will, but in hostility to it, should be, in and of itself, a sufficient determination against this asserted right of Hicks. * * * It is manifest that, upon reason alone, such a child does not and cannot take under the will, since he is permitted to take because he has been omitted from the will. The intent of the testator, as expressed in such a will, is clear. It is to give his property to others, to the exclusion of the omitted heir, and this intent is not affected by the fact that the omission to name the pretermitted heir was or was not intentional. As the omitted heir, in contemplation of the law entitling him to inherit, was never in the testator's mind, by no stretch of imagination can it be said that the testator designed any of the provisions of his will to apply to that heir. * * * Underlying all these cases is the same principle of strict applicability to this respondent—the principle that one who does not take under a will can claim no benefits from that will. So here, the testator's clear and unmistakable design was that his children and widow should have the Iowa property, to the exclusion of Charles Hicks. What the law gives him as a pretermitted heir, he takes outside of and in hostility to the will, and it is not open to him to invoke nor to ask the aid of the court in probate to enforce any of the provisions of the will for his benefit. But it is next said that the respondent had the right to invoke the provisions of the will because he was a party interested in the subject-matter, and in this, reliance is placed upon *Atlee v. Bullard*, 123

Iowa 274.  A ·reading of that case demonstrates how fallacious respondent's effort is to detach a single phrase from its context; for only those are interested in the subject-matter who are the beneficiaries of the particular devise under the will.  And finally, it is said that the election of the devisees and the widow was nugatory because there was a time when one of the children—a Mrs. Gent—did not join in the formal election to take the land as land, though subsequently she did so.  The sole effect of a failure of all the parties in interest to join in the election is that no reconversion takes place, and the equitable conversion still stands.  But this is no bar to a subsequent reconversion by the act of all the parties in interest before sale, since, being all the parties in interest, no one has or can have legal or equitable right to complain of the election when finally made."

The foregoing discussion by the California court is in harmony with our conclusions herein.  This was the holding of the trial court, and its decree is, accordingly,—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.