CHARLES R. HUNTER, Appellee, v. THE CITIZENS SAVINGS & TRUST COMPANY, Appellant.

**Judgments:** EXTENT OF LIEN. A judgment lien is purely a creature of the statute, which is applicable alike to both legal and equitable interests in lands; but the lien does not attach to the land or create any property right in the judgment creditor; it simply attaches to the debtor's interest in the land, and if his interest is subject to any infirmity or condition by which his interest ceases to exist the lien ceases with it.

**Same:** INTEREST OF LEGATEE: EXTENT OF JUDGMENT LIEN. Where the executors were empowered by the terms of the will to sell the real estate to pay debts and legacies, a judgment creditor of one of the devisees, who was given an undivided interest in the residue of the estate, acquired no lien upon the land by virtue of the judgment which could be enforced against it in the hands of a purchaser from the executors, even though he purchased with notice of the judgment; the purchaser taking title through the executor and not through the judgment debtor.

*Appeal from Johnson District Court.*—HON. R. P. HOW-ELL, Judge.

THURSDAY, NOVEMBER 14, 1912.

ACTION in equity to quiet title to real estate. Decree as prayed, and defendant appeals.—*Affirmed.*

*McDonald & Olsen,* and *O. A. Byington,* for appellant.

*W. J. Baldwin* and *S. K. Stevenson,* for appellee.

WEAVER, J.—The conceded facts of the case are as follows: One Rosa Weber, being the owner of a hundred

acre tract of land in Johnson county, Iowa, died testate December 25, 1909. Her will, which has been duly probated, first provides for certain legacies, and then proceeds to dispose of the residue of her estate in the following manner:

I will devise and bequeath all the rest, residue and remainder of my property after payment of the above legacies, which I may have at the time of my death of whatever kind, nature or description, real, personal or mixed to be equally divided among my eight children now living, each to receive one-eighth; to my son, William, one-eighth; to my son, Frank, one-eighth; to my son, George, one-eighth; to my son, Eddie, one-eighth; to my daughter, Mary Bothell, one-eighth; to my daughter, Annie Frisbie, one-eighth; to my daughter, Lizzie Weber, one-eighth.

### Codicil.

I name and appoint my son, William Weber and A. B. Frisbie, my son-in-law, to be the sole executors of this will and my estate without bond and authorize and empower them to sell my real estate and sign a deed therefor as fully and completely as I myself could do. And said deed when so signed shall convey all right, title or interest I have in any of my real estate at the time of my death, and no bond shall be required for the sale of said real estate or other purposes.

In the exercise of the power conferred upon them by the foregoing devise the executors on April 8, 1910, entered into a written contract to sell and convey said land to Charles R. Hunter, plaintiff herein, and thereafter on March 1, 1911, a deed of conveyance in pursuance of said contract was made and delivered. It further appears that the land was incumbered by a past-due mortgage of $2,500, and that other valid claims to the amount of $400 were outstanding against the estate. The testatrix left no personal property available for the payment of debts, and said land constituted the only fund from which means

could be derived for the proper administration and settlement of the estate. At the time of making the deed to plaintiff he paid the agreed purchase price of the land, except the sum of $500, which was deposited with the defendant bank to secure the payment of claims which might be established against the estate during the time allowed therefor by law. At the same time the executors entered into a bond to plaintiff to protect him against any adverse claims which might be asserted against the land by judgment creditors of the beneficiaries under the will. It further appears that on May 25, 1906, and in the lifetime of the testatrix, the defendant bank obtained a judgment in the district court of said county against W. A. Weber (who is the William Weber named in the will) for $307, with interest and costs, and that said judgment has never been paid or otherwise discharged. The defendant, asserting that upon the death of the testatrix its judgment became a lien upon the land or upon such interest therein as was acquired by W. A. Weber, caused execution to be issued and levied upon the property under date of May 18, 1911, whereupon plaintiff served written notice upon the defendant of his claim of ownership free and clear from the alleged lien, and, having tendered to defendant the sum of $1.25 as provided by statute to cover the expense of making the conveyance, demanded the execution and delivery to him of a quitclaim deed. Said demand being refused, this action was begun to settle the rights of the parties, and quiet the title in plaintiff. The defendant's answer, briefly stated, is a reassertion of the existence of its alleged judgment lien which it asks the court to affirm and establish by its decree. The trial court found for the plaintiff that the judgment was not a lien upon the lands in his hands. To obtain a reversal of that holding, the defendant appeals.

A judgment lien is a creature of the statute, and, except as there provided, none exists. Our statute (Code,

section 3801) provides that judgments in courts of record

1. JUDGMENTS:
extent of
lien.

are liens upon real estate owned by the defendant at the time of such rendition, and also upon all he may subsequently acquire for the period of ten years from that date. This has been held applicable to both legal and equitable interests in lands. *Brebner v. Johnson,* 84 Iowa, 23.

But a judgment lien has no effect to create any property right in the judgment creditor. It does not attach to the land as distinct from the title held or obtained by the debtor. His lien simply gives him a prior right as against a general creditor to enforce his claim by levy upon and sale of the debtor's legal or equitable estate in the land, but he can not seize, sell, or acquire any greater interest than is owned by the debtor himself. If there be any equities, limitations, or conditions attaching to the debtor's title which would defeat it in the hands of the debtor himself, it would be subject to the same infirmities and liabilities in the hands of the purchaser under such levy. Even if the debtor has some real or apparent interest in land to which the lien his attached, yet if his title has been so qualified in the instrument creating it that it may be defeated or divested by a power intrusted to another, and it is in fact thereafter so defeated or divested, the lien falls with it, and the creditor can not pursue the property in the hands of a third person who has acquired it through the exercise of that power. This not only the reasonable rule, but is we think sustained by all the authorities. The thought will perhaps be more clear if we keep in mind the fact that a judgment lien does not attach to the land, but to the judgment debtor's interest in it, and, if that interest be subject to any infirmity or condition by reason of which it is eliminated or ceases to exist, the lien attaching thereto ceases with it. *Beaver v. Ross,* 140 Iowa, 154; *Thomas v. Kennedy,* 24 Iowa, 405; *Bucknell v. Deering,* 99 Iowa, 548; *Holden v. Garrett,* 23 Kan. 98; *Shipe v. Re-*

*pass,* 28 Gratt. (69 Va.) 716; *Sinclair v. Sinclair,* 79 Va. 40; *Snyder v. Martin,* 17 W. Va. 276 (41 Am. Rep. 670); *Scudder v. Voorhiss,* 5 Sandf. (N. Y.) 271. Applying this principle, the New York court in *Moore v. Pitts,* 53 N. Y. 86, where a lien was sought to be enforced against one Hall, says: "It is obvious that the lien of Gilman's judgment could only attach to such estate as Hall had in the premises. If that estate was subject to be divested by the breach of any condition subsequent, any such breach that would divest the estate would of necessity destroy the lien." See, also, *Ackerman v. Gordon,* 67 N. Y. 63; *Rose v. Hatch,* 125 N. Y. 427 (26 N. E. 467); *Leeds v. Wakefield,* 10 Gray (76 Mass.) 514; *Smyth v. Anderson,* 31 Ohio St. 144; *Baker v. Copenbarger,* 15 Ill. 103 (58 Am. Dec. 600); *Wetmore v. Midmer,* 21 N. J. Eq. 242; *Morse v. Bank,* 47 N. J. Eq. 279 (20 Atl. 961, 12 L. R. A. 62); *Mayo v. Merritt,* 107 Mass. 505.

The application of this rule to the case at bar is too clear to require argument. The will did not devise the land to the beneficiaries therein named. It gave them no

2. SAME: interest of legatee: extent of judgment lien.

more than a specified share in the residue of the estate. It may be presumed that the testatrix knew that she was leaving no personalty with which to pay her debts and the legacies provided for in her will and that a sale of the land would doubtless be necessary for a proper settlement of her estate; but, even if such be not the case, she had the undoubted right to confer upon her executors a power of sale, and so long as the estate remained unsettled, and the executors were still in the active exercise of their trust, no devisee under the will could dispose of any part or share of the land and invest the purchaser with title or estate therein which would not be defeated and rendered ineffectual by a conveyance by the executors under the testamentary power conferred upon them. This is squarely held in the half dozen cases last above cited. It is

immaterial whether we adopt the view that, by reason of an application of the doctrine of equitable conversion, the entire property is to be treated as personalty, or adopt the other theory that the beneficiaries under the will took an actual legal or equitable estate in the land. In the former case there would be no lien which could affect the land in the hands of a grantee in a conveyance by the executors. In the latter case the estate or interest held by the debtor in the land would be divested by the executor's deed, and his only right in the premises would be his right to his proper share of the proceeds of the sale or rather to his proper share in the distribution of the residue of the estate after paying the legacies and making due settlement of claims and expenses of administration. With the extinguishment of the debtor's interest in the land the creditor's lien was also extinguished.

Without quoting largely from the precedents, it may be said that their general purport is fairly reflected in *Morse v. Bank*, 47 N. J. Eq. 279 (20 Atl. 961, 12 L. R. A. 62), a case in which the facts are much like those shown in the record before us. There the will authorized the executor to sell and convey. A judgment creditor levied an execution upon the fractional interest of a devisee, and obtained a sheriff's deed therefor. Subsequently the executor exercising the power given him by the will sold and conveyed to another purchaser. Upholding the latter conveyance the court says: "By the purchase at the sheriff's sale, complainant acquired only Richard's estate as an heir at law, subject to the trust and power of sale contained in the testator's will. If the power of sale subsisted and was capable of being executed at the time of the sheriff's sale, the purchaser at the executor's sale took a title under the testator's will paramount to any estate derived from or through the heir." The decision in in *Wetmore v. Midmer*, 21 N. J. Eq. 242, is also very closely in point upon the question before us. The case

of *Atlee v. Bullard,* 123 Iowa, 274, cited by appellant, is not in point. There no attempt was made to exercise the testamentary power, but all parties in interest united in treating the property as land owned in common and entered into a partition of the same as such. The question as to the effect of the power upon the rights of the parties was not suggested until controversy arose over the adjustment of liens in distributing the proceeds of the partition sale, and we held that the point was raised too late. The decision in *Williams v. Lobban,* 206 Mo. 399 (104 S. W. 58), also relied upon by the appellant, does not sustain its contention for the opinion expressly recognizes the principle that the heir's right and title to the land may be divested by the exercise of the power contained in the will. Counsel seem to argue upon the theory that the executors in exercising the powers given to them were selling and conveying the property of the devisees, and, as the latter could not have avoided the lien had they themselves made the conveyance, the same result must follow a conveyance by the executors. This view wholly ignores or misapprehends the nature of the estate or interest created by the will. As we have already mentioned, the will makes no specific devise or disposition of the land. The gift to W. A. Weber is limited to the right to an equal one-eighth share of the residue of the estate after paying legacies, debts, and expenses of administration, and this gift is made subject to the power of the executors to sell and convey. But the title conveyed under the power is not the title of the devisee. It is the title of the testator which passes to the purchaser directly from the testator through the executors, and not through the heirs. The power and authority of the executors to sell and convey being clearly paramount, its exercise eliminates or defeats the inferior or imperfect title, if any they had, of the devisees, and as a necessary consequence the lien, if any, attaching to such inferior or imperfect title, is extinguished

with it. In this connection it is immaterial whether the true theory be that the executors took the title to the land for the purposes of their trust, or whether they be considered as the devisees or depositories of a power only, or whether the effect of the devise was to work an equitable conversion of the realty into personalty. By either route we are inevitably led to the same result. Many of the authorities are reviewed by this court in *Beaver v. Ross, supra,* and the conclusions there announced are in harmony with the views we have here expressed.

The point made by appellant that plaintiff purchased the land with notice of the claim asserted by appellant is not controlling. If the judgment was a lien which would follow the title in the hands of a grantee in an executor's deed, he would be held to have had at least constructive notice of it and could not be heard to object to its enforcement, but if, as we have said, there was no lien or if there was a lien, and it was such as would be extinguished by a conveyance under the paramount power, there is no rule of law or principle of equity which would forbid his taking such conveyance and insisting upon holding the title free from the claims of the alleged lien holder.

The equities of the case as argued by counsel for appellant growing out of the claimed fact that the sale was made by the executors for the purpose of cheating and defrauding the judgment creditors of the devisees are not very persuasive. We do not hold, nor must anything we have said be so understood, that the property or the property rights which the devisees obtained under the will are not liable to be subjected to the claims of their creditors. Our decision only goes to the proposition that a judgment creditor acquires no lien or claim upon the land left by the testator which can be asserted or enforced against it in the hands of one to whom it has been conveyed by the executors in the exercise of power conferred upon them by the will. Beyond that we need not go. The creditors

have neither legal, equitable, nor moral rights to any greater interest or estate in the property than their debtors acquired under the will. It was the undoubted right of the mother in making her will to burden or limit the estate she was giving her children by such lawful conditions and limitations as to her should seem wise. She was under no obligations to provide for the payment of their debts or to protect their creditors, and, if the conditions or limitations imposed by her made the subject of the devise less available or more difficult of subjection to the payment of their claims, it was within her right so to do, and affords them no just ground of complaint. *Meek v. Briggs*, 87 Iowa, 620.

It is unnecessary to further pursue the discussion. What we have said sufficiently indicates our conclusion that the trial court was not in error in holding that, upon the agreed facts, the appellant's judgment constitutes no lien upon the land in the hands of the plaintiff.

The decree below is therefore—*Affirmed.*