IN RE ESTATE OF THOMAS T. WICKS.

P. M. NERLAND, Executor, et al., Appellants; H. A. DRAKE, Executor, et al., Appellees.

January 8, 1929.

*Eleanor M. Jones* and *Birdsall, McGrath & Archerd,* for P. M. Nerland, appellant.

*E. M. McCall* and *Lundy & Bateson,* for Varick C. Crosley, appellant.

*Aymer D. Davis* and *Lee, Steinberg & Walsh,* for appellees.

KINDIG, J.—Thomas T. Wicks died testate in Hardin County February 6, 1926, survived by his wife, Dora T. Wicks. On March 8th, his will was probated, and Howard A. Drake, appellee, was appointed executor, as. provided in the testamentary document.

Decedent left real and personal property. The real estate consisted of a 320-acre farm in Hamilton County and some lots in Radcliffe. There is involved here the acreage property only, and the lots are not included in the controversies presented in this litigation. Those lots were sold to pay debts.

It is essential at this time to note that the land was incumbered by two mortgages,—a first of $19,000, due June 1, 1929, and a second for $8,000, due June 1, 1930. In addition to the foregoing, this property was burdened by a drainage assessment of $1,715.85. Hence, the aggregate of those indebtednesses approximates $28,715.85, with interest paid to March 1, 1928. Furthermore, the estate owes other obligations in the

amount of about $10,000. So, after appropriating the available personal property and the proceeds of the said lots to the estate's obligations, including taxes, interest, and incidental items maturing March 1, 1928, there would be left in the executor's possession $5,000 cash, in addition to the equity in the farm.

However, with that cash and equity it is necessary for the executor to pay the liens on the real estate aforesaid, aggregating $28,715.85, the general debts, approximating $10,000, and the legacies named in the will, amounting to $4,000. Therefore, the executor proposed to sell the half section of land above mentioned, in order to obtain the necessary funds with which to make the liquidation and discharge the costs and expenses of the administration. Accordingly, he sought and obtained bids from prospective purchasers who desired to buy the Hamilton County property, and entered into contracts with at least three of them, subject to the approval of the court. These three bidders were the appellant Varick C. Crosley, appellees C. J. and Henry O'Neil, and H. D. Blue. All three agreements thus entered into were submitted to the district court for approval, and each rejected because the prices offered were not sufficient.

Then, on October 13, 1927, the executor entered into a new contract with appellees C. J. and Henry O'Neil, wherein they agreed to pay $46,721.55. This was a larger amount than ever before tendered. Wherefore, on October 27th of that year, the court confirmed the executor's sale to the O'Neils, and approved the deed thereunder, November 28, 1927.

Objection made to the proposed sale by the appellant P. M. Nerland individually, and as executor of the Dora T. Wicks estate, is to the effect that the appellee H. A. Drake, executor of the Thomas T. Wicks will, did not have authority thereunder to sell and convey the real estate. (Parenthetically, it is noted that, a short time after the death of Thomas T. Wicks, his wife, Dora T. Wicks, also died, and P. M. Nerland, the appellant, was appointed executor of her estate, and he is the sole residuary legatee under her will.)

Contrary to the contention of appellant Nerland, the appellant Varick C. Crosley insists that there was authority in the Thomas T. Wicks will empowering the appellee H. A. Drake, as executor, to sell the real estate, and that, because thereof, the contract between Drake and Crosley before mentioned was and

constituted such a valid, absolute, and existing agreement as to make it unnecessary for the court to approve the same, and impossible for that tribunal to reject it. Such are the issues presented for decision.

Material at this juncture are the following portions of Thomas T. Wicks's will:

"I. After my demise I direct that my executor pay all of my just debts and funeral expenses first out of my estate as soon as practical.

"II. I also authorize and direct my executor to erect a suitable monument at my grave using his own judgment and discretion as to the monument that he may erect.

"III. I give and bequeath (to the following persons the following sums) to my sister Madelia H. T. Wicks $1,000; to the children of Ole T. Wicks $1,000; to Isaac Stromm $500; to Goodman T. Wicks $500; and to Lizzie O. Wicks, Tom Wicks, of Clarion, Tom Wicks of Story City, Julia Carpenter, Mrs. Ellen Solberg, Julia Orton, Gusta Wicks, and George Wicks $1,000, to be divided share and share alike (aggregating $4,000 in bequests).

"IV. After the payment of the cost of administering my estate, I give the balance and residue of my estate, to my beloved wife, Dora T. Wicks, for her to own, use and dispose of as she may see fit.

"V. But in case that I survive my beloved wife, Dora T. Wicks, and in that case as fast as my executor can convert my property into money, my executor to have full authority, using his own judgment in taking as much time to sell and dispose of my property as he may think is to the best interest of my estate, I direct him to pay the net proceeds thereof to the authorities at Skaanaveg, Norway, to be used for the support of the poor in that town or province, being the home of my birth.

"VI. I hereby authorize my executor and give him full power and authority to sell any real estate or other property that I may own at the time of my death and give him full authority to execute deeds and release all mortgages necessary in the closing of my estate.

"VII. I hereby constitute and appoint Howard A. Drake of Radcliffe, Iowa, as executor of this my last will and testa-

ment, with full power and authority to make disposition of my estate as aforesaid. * *:* "

Appellant P. M. Nerland, executor of the estate of Dora T. Wicks, urges that the above and foregoing instrument did not empower Howard A. Drake, the executor of the Thomas T. Wicks estate, to sell the real estate belonging thereto. Basis for this theory is placed upon the ground that the will created a fee-simple estate in the wife, Dora T. Wicks, and that to allow the executor to sell the same would cause a repugnancy. To more fully set forth the entire theory at this place, it is necessary to suggest that the appellant Nerland argues that the only power in appellee H. A. Drake to sell, as executor under the Thomas T. Wicks will, was in the event that the wife, Dora T. Wicks, predeceased the testator, and Paragraph V of the testament, above quoted, came into operation.

Necessarily, then, this appellant claims that the only method for the appellee Drake, as the Thomas T. Wicks executor, to sell the real estate, is by a proceeding in the regular way, by notice, etc., as if there were no provision in the will of the nature claimed. Manifestly, this position cannot be successfully maintained.

I. Without question, it is recognized by courts and lawyers everywhere that a testator, by the use of appropriate language, may confer power upon his executor to thus sell real estate. Al-most, if not, universally the courts so hold. Many pronouncements to that effect have been made by this court. Among those decisions are the following: *Hunter v. Citizens Sav. & Tr. Co.*, 157 Iowa 168; *Hunter v. Amish*, 164 Iowa 397; *Lund & Seamands v. Riggs*, 174 Iowa 79.

II. Likewise, the *Hunter* and *Lund* cases are authority for the proposition also that Thomas T. Wicks, in the will here involved, employed phraseology plainly, unmistakenly, and positively indicating his intention to clothe H. A. Drake, the executor, with sufficient permission in that regard. Very evidently this testator knew his outstanding indebtedness, and, of course, understood the special bequests provided for in the will. Moreover, he was mindful of the extent of his earthly possessions. Consequently, then, it was plain to the testator, when he made

his will, that it would be necessary to dispose of the real estate in order to pay those debts and bequests.

More than this, the testament, in addition to Paragraph VI, provides in Paragraph VII that the executor has "full power and authority to make disposition of * * * [the] estate as aforesaid." Apt language in *Hunter v. Citizens Sav. & Tr. Co.*, supra, applies the general principle in this way:

"It may be presumed that testatrix knew that she was leaving no personalty with which to pay her debts and the legacies provided for in her will, and that a sale of the land would doubtless be necessary for a proper settlement of her estate * * * ."

III. That being true, is there fatal repugnancy arising out of any conflict between the devise to the wife, Dora T. Wicks, and the attempted bestowal of said conveyance power upon the executor? Study of this problem will be assisted by an analysis of the devise to the wife, Dora. She did not receive any particular or definitely described property through the will. The testator, when disposing of his property to her, used these words: "I give the *balance and residue of my estate.*" (The italics are ours.) In other words, the "devise" was not specific, but general. *Wilts v. Wilts*, 151 Iowa 149; *Bales v. Murray*, 186 Iowa 649. We said in the *Wilts* case:

"To be specific, a gift, whether real or personal property, must be of a designated article or specific part of the testator's estate which is identified and distinguishable from other things of the same kind, which may be satisfied by delivery of the specific thing or portion."

Clearly, that was not what the testator, Thomas T. Wicks, understood he was doing. He attempted to do, and in fact did, just the opposite, and provided that his wife should have the "balance and residue," rather than any particular item or specifically designated part of his property. Resultantly, a repugnancy did not arise because the testator authorized his executor to sell the real estate, to pay from the proceeds thereof the debts and bequests, and deliver the "balance and residue" to the wife, Dora T. Wicks. *Ruggles v. Powers*, 201 Iowa 284.

See, also, *Elberts v. Elberts*, 159 Iowa 332; *Iimas v. Neidt*, 101 Iowa 348; *Guilford v. Gardner*, 180 Iowa 1210; *Porter v. Tracey*, 179 Iowa 1295; *Mapes v. Rose*, 187 Iowa 289; *Wheeler v. Long*, 128 Iowa 643; *In re Will of Biles*, 88 Misc. Rep. 452 (151 N. Y. Supp. 1097). *Ruggles v. Powers*, supra, consistently says:

"The point made by appellant in argument is that the provision of the will authorizing the executor to sell the real estate is void because repugnant to the preceding clause, which vested the title absolutely in the devisees, subject only to the life estate and the payment of debts. The point is without merit, and we need not discuss it."

We do not hold or suggest that there would have been a repugnancy, had the devise to Mrs. Wicks been specific, rather than general. Our discussion on this subject has been molded according to the facts here presented.

IV. It follows of necessity, then, that the executor possessed the power to sell the real estate under justifying circumstances and for proper purposes. What are those "purposes and circumstances?" Embraced among them must be, as declared by the testator in Paragraph VII of his will, the following: "To make disposition of my estate as aforesaid." "Aforesaid" included there the debts, costs of administration, and bequests. *Lund & Seamands v. Riggs*, supra; *Hunter v. Citizens Sav. & Tr. Co.*, supra; *Packer v. Overton*, 200 Iowa 620. $4,000 was given by the testator in legacies. They are pecuniary and general, for they are payable "from the general estate of the testator; and the entire residuary estate, both real and personal, is charged therewith." *Packer v. Overton*, supra.

Beyond a peradventure of a doubt, the "purposes and circumstances" above referred to must include the debts. Thus, when the executor made the sale in controversy, he did it in order, first, to pay the debts and legacies named, and second, so he could "give the balance and residue" to Dora T. Wicks. This was in accordance with the testator's own desire, as expressed specifically in Paragraph VII of the will, when he said that the executor should so do in order "to make disposition of my estate as aforesaid." Paragraph V, therefore, never became operative, because Mrs. Wicks outlived her husband, and there was no

occasion, consequently, to send any part of the estate to Norway.

V.   Attention is now directed to the suggestions made by Varick C. Crosley, appellant.   As earlier stated in the opinion, this appellant demands a conveyance of the land to him because of the previously named contract with the executor, which was rejected by the court.   To more fully state Crosley's idea, it is that, when such written agreement was signed by the proposed vendor and vendee, it became a finality, and could not thereafter be changed or set aside.

The difficulty with this contention is that the purported covenant to convey contained a saving clause, to the effect that it was made ''subject to the approval of the court.''   Crosley, the appellant, adopted that as part of his own agreement with the executor, and thereby consented that it be carried out.   By so doing, he is now estopped from saying that the court had no right to affirm or disaffirm the written undertaking.

It is not decided or intimated that the court would not have had this power of approval without the reservation.   Decision here is confined to the facts involved.

Wherefore, the contract made by the executor with C. J. and Henry O'Neil for $46,721.55 was correctly approved by the district court, and the judgment and decree of that tribunal should be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.