In re Estate of Mary A. Rude.

Carl R. Faber, Appellant, v. Bert J. Dean, Executor, et al., Appellees.

No. 46298.

July 27, 1943.

Frank J. Lund, of Webster City, and Alan Loth, of Fort Dodge, for appellant.

Burnstedt, Hemingway & Hemingway, of Webster City, for executor-appellee, and Prince & Evans, of Webster City, and Lundy, Butler & Lundy, of Eldora, for other appellees.

MILLER, J.—Mary A. Rude died testate July 24, 1940, a resident of Illinois. The will was admitted to probate, as a foreign will, by the district court in and for Hamilton County, Iowa, and Bert J. Dean, executor of the estate in Illinois, was appointed and qualified as executor in Iowa. He filed an inventory showing that testatrix died seized of a farm of 554.6 acres in Hamilton County, Iowa.

The twenty-third paragraph of the will provided as follows:

"I hereby order and direct my executor hereafter named, to sell and convey for cash, all the real estate that I may own at the time of my death, and to sell the same either at public or private sale, and to whomever and for whatever price my said executor may think for the best interests of my estate, hereby giving and granting unto my said executor full power and authority, as such executor, to execute and deliver to the purchaser or purchasers of said real estate, good and sufficient deed or deeds of conveyance of same * * *."

On December 5, 1942, Carl R. Faber filed an application for approval of a contract, executed October 31, 1942, whereby Dean, as executor, undertook to sell to Faber the Iowa farm of 554.6 acres for $135 per acre or $74,925 payable $7,500 as earnest money and the balance on or before February 15, 1943. Copy of the contract was attached to the application. Its provisions included the following:

"This contract is made by the first party as executor aforesaid, and it is subject to the approval of the proper Court of Hamilton County, Iowa."

Approval of the contract was sought for six reasons, to wit: (1) The executor promised to secure such approval and failed to do so without cause (2) Faber has paid $7,500 on the contract (3) the contract is advantageous to the estate in that it is the full, fair, and reasonable price of the farm (4) Faber is the tenant on the farm and is entitled to remove valuable improve-

ments at the expiration of the tenancy (5) any other buyer must buy subject to Faber's rights; in reliance on the contract Faber did certain plowing and other improving; the will grants full authority for the contract (6) the delay in approval of the contract creates uncertainty and subjects Faber to loss and great inconvenience. The prayer was that Faber have permission to present the contract for approval, that same be approved by the court, and that the executor be ordered to perform the same.

On December 11, 1942, Faber's application was amended by adding the following thereto:

"That under the will of decedent, made a part of this application and amendment by reference, Bert J. Dean, the executor, is given unlimited power in making sale of the real estate in question and making the Contract annexed to the application. And said sale and contract is binding and valid and, in absence of any fraud, collusion or bad faith on the part of any party to the contract, the said parties are entitled to a confirmation and approval of said contract as a matter of right; and said sale and transaction is not subject to any dickering, competition or other investigation unless there be fraud, bad faith, collusion or malfeasance of the executor or this applicant. That applicant's purchase, and the sale by the executor, was made in the utmost good faith and without fraud, collusion, malfeasance, and he is entitled to the confirmation and approval of said contract accordingly."

On December 12, 1942, the executor filed a report, setting out that the contract with Faber was subject to the approval of the court and asserting that, before a report of such sale could be made or approval requested, an offer was received from Iowa Farms, Inc. for $140 per acre, amounting to $77,644 or $2,719 more than that received from Faber; that if the conditional contract of Faber be not approved because of the increased bid of Iowa Farms, Inc., Faber should be permitted to meet or exceed such bid. The prayer was that a hearing be had and that the court direct the executor how to proceed. At the same time the executor moved to strike the application of Faber

on the ground that it raised equitable issues not cognizable in the probate court. Several devisees intervened and joined in the position taken by the executor.

In the meantime, on December 5, 1942, M. H. Thompson had filed a claim for $1,386.50 as real-estate commission for making the sale to Faber, which claim had been set for hearing on December 12, 1942. This claim and the various filings aforesaid came on for hearing on said date. The court suggested that the matter be postponed for one week to permit Faber to think it over and to let anyone come in to bid, with the understanding that Faber, by matching the bid, could have the farm. The executor agreed, and, over the objections of Faber and Thompson, the matter was postponed to December 19, 1942.

On December 19, 1942, the matter again came on. Considerable colloquy between counsel took place, which space will not permit us to here record. Faber insisted that he had a valid contract for the farm that could only be impeached for fraud or bad faith. The court determined that other bids would be considered. Eventually, Mr. Russell bid $142.50 per acre subject to such improvements as Faber had a right to remove; Iowa Farms, Inc. bid $143; Russell bid $144; Faber stood pat; Iowa Farms went to $145; Russell countered with $145.50; Iowa Farms bid $146 per acre; Russell gave up; Faber still stood on his original contract and insisted on his right to introduce his proof. The court permitted Faber to introduce his evidence on the basis that the farm would go to Iowa Farms, Inc. on their offer of $146 per acre, on the conditions enumerated in reference thereto, subject to such rights as Faber might establish.

The evidence consisted of the testimony of Dean, Thompson, and Faber, and a number of exhibits identified by them. Space does not permit a review of such evidence. It was apparently offered for the purpose of showing good faith on the part of Faber, and perhaps as bearing on the interpretation of the provision for approval by the court. The court found that all parties acted in good faith and that the contract should be interpreted according to its terms. The court was clearly right in each instance.

Toward the end of the hearing, the executor formally tendered to Faber his check for $7,500, which had been delivered as earnest money under the contract. The tender was refused. The hearing was adjourned until December 21, 1942. On that day the executor filed an amendment to his report of sale, setting forth the offer of Iowa Farms, Inc. of $146 per acre, asserting that it is the fair market value of the farm, and praying that said offer be accepted and a sale thereon be authorized. Faber moved to strike this amendment and offered in evidence the probate file in the estate. The matter was then argued and submitted. The court made an oral statement of its findings of fact and conclusions of law, the result of which was to grant the executor's prayer that the bid of Iowa Farms, Inc. be accepted and sale of the farm pursuant thereto be authorized. Formal orders to that effect were entered forthwith. Faber appeals to this court.

Appellant's first assignment of error asserts that, in passing on the power of sale under the will in question, the court could only inquire whether the sale was within the authority of the power, in good faith, with honest discretion; the court could not substitute its judgment for the executor's or otherwise control his sale; the approval contemplated by the contract was limited to such inquiry and did not warrant converting the executor's private sale into a judicial sale by the judge; the court was limited to the circumstances existing when the contract was made and could not consider those brought about by the hearing; the sale was not a judicial sale where the court does the selling and a bid is a mere offer until accepted by the court, and cases holding that a judge, at a judicial sale, may accept bids until confirmation do not apply; even the rules as to judicial sales would not permit ignoring appellant's contract because of the later bid which the court accepted herein. We find no merit in such contentions.

Appellant cites and discusses many decisions of this and other courts in support of the foregoing contentions. In the course of such discussion is the following significant statement:

"An exhaustive search discloses no case involving such a

contract where the question was: what standard should govern the approval? But analogous decisions support our claim.''

Space does not permit a detailed discussion of the various analogies which appellant seeks to draw. Obviously, the cases are not controlling here and could be persuasive only.

The crux of the case is, as stated by counsel, What standard should govern the approval of the court herein? In appellant's original application for approval by the court, the third ground asserted was, as above set out, that the contract is advantageous to the estate in that it is the full, fair, and reasonable price for the farm. In the amendment, filed December 11, 1942, as aforesaid, this position was abandoned and appellant asserted that the contract of sale is valid and binding, and, in the absence of fraud, collusion, or bad faith, either party is entitled to a confirmation and approval of the contract as a matter of right. The court took the position that the proper standard for its approval was asserted in the original application and refused to adopt the standard asserted in the amendment. In so doing, the court relied upon and undertook to follow two decisions of this court, namely, In re Estate of Wicks, 207 Iowa 264, 222 N. W. 843, and In re Estate of Doherty, 222 Iowa 1352, 271 N. W. 609.

In the Wicks case, the decedent's will gave the executor ''full power and authority to sell any real estate or other property that I may own at the time of my death.'' [207 Iowa at page 267, 222 N. W. at page 845.] There was a question raised whether there was a repugnancy between the devise to the widow and the bestowal of the power of sale on the executor. This court held that there was no repugnancy. The executor had entered into a contract for the sale of certain real estate, ''subject to the approval of the court.'' Thereafter he entered into a new contract for the sale of the same real estate for a larger amount. The trial court rejected the first contract and approved the later one. On appeal the cause was affirmed, this court stating, at page 271 of 207 Iowa, page 846 of 222 N. W., as follows:

''Attention is now directed to the suggestions made by Varick C. Crosley, appellant. As earlier stated in the opinion,

this appellant demands a conveyance of the land to him because of the previously named contract with the executor, which was rejected by the court. To more fully state Crosley's idea, it is that, when such written agreement was signed by the proposed vendor and vendee, it became a finality, and could not thereafter be changed or set aside.

"The difficulty with this contention is that the purported covenant to convey contained a saving clause, to the effect that it was made 'subject to the approval of the court.' Crosley, the appellant, adopted that as part of his own agreement with the executor, and thereby consented that it be carried out. By so doing, he is now estopped from saying that the court had no right to affirm or disaffirm the written undertaking."

Appellant seeks to distinguish the Wicks case on the ground that it did not pass on the question, "By what standard should approval be given or withheld?" We cannot agree with appellant's contention. Our position is supported by the interpretation which we made of the Wicks case in the Doherty case, wherein we state, at pages 1357 and 1358 of 222 Iowa, page 611 of 271 N. W., as follows:

"The appellee relies upon the holding in In re Wicks' Estate, 207 Iowa 264, 222 N. W. 843, as sustaining its contention that the probate court has the jurisdiction and power to set aside its order approving the sale and transfer, but the cited case does not furnish support for the appellee's contention. In the cited case in the contract of sale was included a clause that the contract was made subject to the approval of the court, while this court held that such clause became a part of the contract, notwithstanding the power of sale contained in the will, and that the court had a right under the facts in that case to set aside an order directing the sale but before its approval, when it appeared that more advantageous terms for the sale could be procured. The sale had not been approved by the court and approval was refused. The purchaser sought to compel a consummation of the contract of sale and a conveyance, and this court held that he was not entitled to such relief because of the inserted clause in the contract that the sale must be approved by the court."

Appellant points out that the foregoing language is dictum. The observation is correct. The Doherty case is not a precedent under the doctrine of stare decisis that is controlling upon our decision herein. But it is persuasive authority for the proposition that the Wicks case is a precedent on the question now before us. We are satisfied that in the Wicks case we held that, where an executor is given power to sell real estate and enters into a contract for such a sale, but the parties make the contract "subject to the approval of the court," the court may refuse to approve the same on the basis that it is not advantageous to the estate and not for the full, fair, and reasonable value of the property, and, in so determining, the court may consider a subsequent offer for the same real estate at a substantially larger price. We cannot distinguish the Wicks case and we are unwilling to overrule it. The court correctly held that it is controlling here.

The court found, and correctly so, that the executor acted in good faith throughout. He lived in Illinois and was corresponding with his local counsel in Iowa. After the contract with appellant had been executed, the higher bid of Iowa Farms, Inc. was received. The executor did not seek approval of Faber's contract because he was doubtful that it was advantageous for the estate. He doubted that the price agreed upon was the full, fair, and reasonable value of the farm. Throughout the controversy that developed, the executor adhered to such position. The court adopted the same position. Both gave Faber full opportunity to meet any increased bid. He steadfastly refused to consider doing so. The proceedings produced an ultimate bid of over $6,000 above Faber's price. The executor, as a fiduciary, was unwilling to ignore it and felt that it was more advantageous to the estate. Originally he had attempted to sell the farm for $150 per acre. The ultimate bid of $146 per acre was still under his original price. His conduct was consistent throughout. We find nothing that would warrant or require a reversal herein.

It might be well to add that Faber's proposal was not made at a public sale, and the cases which have frowned upon upset bids in such sales, because public bidding should be encouraged,

not chilled, are not applicable here. This was a private sale by an executor who was given power to sell property for whatever price he "may think for the best interests of the estate." He made a contract to sell a farm for a substantial sum of money, but the contract was made expressly subject to the approval of the court. This provision was utilized by the executor and the court as a means of making certain that the property be sold for a price which was for the best interests of the estate. The court acted properly.

There are other propositions argued by appellant in his brief, but they are controlled by the foregoing pronouncements. We need not elaborate further. The cause is—Affirmed.

All JUSTICES concur.