Argued February 25, reversed and remanded April 8,
reconsideration denied May 15, petition for
review denied June 11, 1974

In the Matter of the Estate of Beatrice A. Frank,
Deceased.

## HELGESSON, *Respondent, v.* ESTATE OF BEATRICE A. FRANK, Deceased, KIRKENDALL et al, *Defendants,* FRANK, *Defendant-Appellant,* YERKOVICH (No. E-587), *Appellant.*

521 P2d 16

*Donald C. Walker,* Portland, argued the cause and filed the brief for appellants.

*A. W. Pedersen,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

The issue on this appeal involves the authority of an executrix-personal representative to sell real property belonging to a decedent's estate. The probate court enjoined the sale upon an heir's objection; however, after intervention by the buyer, the probate court ruled that it lacked the authority to prevent a sale of real property of the estate and ordered the personal representative to proceed with the sale. The objecting heir appeals from that order.

Beatrice Frank died testate on February 18, 1972. The provisions of her will and codicil provided for the distribution of her estate to named devisees in percentage shares. Appellant Carl Otto Frank is a 50 per cent devisee of her "distributive estate." The will also named Dolores Kirkendall as executrix and provided her with broad powers to

> "* * * sell, * *, * or otherwise deal with or dispose of all my property, real or personal, or any part thereof, in such manner, at such times, and upon such terms as * * * she shall deem to be to the interest of my estate. Such sale or other disposition may and shall be made without any reference to the order of disposition of real and personal property and without any citation, petition, hearing, order or any other action * * *."

The executrix was appointed personal representative on April 6, 1972, and on that same day received an offer from Mr. Helgesson for the purchase of a parcel of real property belonging to the estate. An earnest money agreement was executed on April 10, the terms of which provided that the purchaser was to pay the sum of $55,000 cash. One thousand dollars was paid as earnest money, the balance of $54,000 was to be payable:

> "Cash within 60 days of court approval or acceptance whichever is the sooner."

The personal representative testified that prior to signing the above earnest money agreement, she sought and obtained the oral consent of all the devisees of the estate. Her attorney testified that he advised her to obtain the consent of the heirs even though he did not consider such consent necessary to a valid sale under the terms of the will.

Carl Frank, however, contends that he never consented to the sale. A letter dated April 11, from Mr. Frank's attorney to the attorney for the personal representative, expresses Mr. Frank's objections to the sale. Formal objections to the sale were filed with the probate court on April 20, and on May 22 the court ordered the personal representative not to proceed with the sale of the property until the court either approved or disapproved it.

The matter was rescheduled for hearing on September 22, 1972, at which time Mr. Frank, through his attorney, made an in-court offer of $65,000 cash for the subject real property. Following brief arguments, the court ordered the personal representative not to proceed with the sale to Mr. Helgesson. Thereafter Mr. Helgesson filed a petition seeking to intervene as an interested party, urging the court to reverse its prior order restraining the sale under the earnest money agreement. The petition was granted and the matter was heard by the probate court.

■ On September 18, 1973, the probate court entered an order dismissing Mr. Frank's objections to the sale, vacating its prior order restraining the sale and authorizing the personal representative to proceed under the earnest money agreement of April 10, 1972. The court's memorandum opinion, however, stated that the earnest money agreement was not subject to court

approval and that the court "* * * may not substitute its judgment and discretion for that of the executrix [personal representative] in view of the provisions of the Will and the probate code." The court apparently concluded that because the will and the probate code[1] authorized the personal representative to sell property of the estate without court approval, the court was powerless to act regardless of the condition expressed in the earnest money agreement itself. For the reasons to be discussed, we disagree with the probate court's opinion that it was without power either to approve or disapprove the sale to Mr. Helgesson.

### 1. Authority of personal representative to sell property

Under the 1969 probate code the personal representative has broad powers to proceed in the administration of an estate. ORS 114.275. Included is the authority to sell estate property without prior notice to the heirs, without prior approval from the heirs or without court approval except upon three conditions not relevant in the present case. ORS 114.325. The will of Beatrice Frank did not specifically devise any of her property. Instead, each heir was given a percentage share of the total estate. Further, as we have previously noted, the will authorized the personal representative to sell estate property, or otherwise deal with it, in any manner deemed to be in the best interests of the estate.

---

[1] "A personal representative shall proceed with the administration, settlement and distribution of the estate without adjudication, order or direction of the court, except as otherwise provided * * *." ORS 114.275.

"A personal representative has power to sell, mortgage, lease or otherwise deal with property of the estate without notice, hearing or court order." ORS 114.325 (1).

■ ■ Title to a decedent's property vests, upon death, in the persons to whom it is devised, "subject to * * * administration and sale by the personal representative." ORS 114.215 (1) (b). Commenting on the 1969 probate code, Professor Mapp states that "the ultimate result of the exercised power of sale is to *shift* the rights of interested persons from specific property to proceeds of sale, perhaps to be supplemented by the personal liability of the personal representative * * * if a breach of fiduciary duty has resulted in loss." Mapp, *The 1969 Oregon Probate Code and Due Process,* 49 Or L Rev 345, 371 (1970). The same result is reached through the doctrine of equitable conversion—an interest in real property is converted to an interest in personalty (proceeds of sale). *Putnam et ux v. Jenkins et ux,* 204 Or 691, 285 P2d 532 (1955).

■ It is therefore evident that, in so far as the will or the probate code is concerned, the personal representative in the present case was clearly authorized to proceed to sell estate property without court approval or approval of the heirs. ORS 114.325. However, the personal representative is a fiduciary and is under a duty to administer the estate "with as little sacrifice of value as is reasonable under the circumstances." ORS 114.265. As such a fiduciary, the personal representative has a duty, if a sale is in the best interests of the estate, to sell the estate assets for the best price that can reasonably be obtained in the market at that time. *State v. Hartman,* 54 Wis2d 47, 54, 194 NW2d 653 (1972); *King v. King,* 225 Ga 142, 166 SE2d 347 (1969).

■ The pending sale to Mr. Helgesson was not in contravention of any provision of the will or the probate code. Execution of the earnest money agreement

was within the authority of the personal representative. However the proposed sale may still be subject to an objection that it is not in the best interests of the estate.

## 2. Earnest money agreement

The agreement executed between Mr. Helgesson and the personal representative contained a handwritten proviso entered on a printed form earnest money receipt.[②] The proviso stipulated that the buyer was to pay cash within 60 days of the happening of either of two events—(1) "court approval" or (2) "acceptance."

■■ As a general rule, courts interpret the intent of parties to a contract according to the language of the contract. *Ryan v. Western Pac. Ins. Co.*, 242 Or 84, 90, 408 P2d 84 (1965); *Parsons v. Boggie*, 139 Or 469, 11 P2d 280 (1932). Under the terms of the will in the present case, the personal representative was authorized to sell property "upon such terms" as she deems to be in the best interests of the estate. There is, however, nothing in the will or probate code which prevents her from making the sale subject to either of the two conditions. Having included these two conditions as terms of the earnest money agreement, and there being no evidence that the parties did not intend to be bound by their contract as a whole, it would appear that the parties also intended to be bound by the specific terms of the agreement, i.e., (1) "court approval" or (2) "acceptance." *See, Faydrex, Inc. v. Keen,* 248 Or 54, 432 P2d 192 (1967).

■ The term "acceptance," contained in the above

---

[②] The real estate broker, Mr. Baker, testified that he drafted the agreement and that he customarily adds the provision for court approval, but that he considers the provision surplusage.

provision of the earnest money agreement, is, however, ambiguous. Mr. Frank (the objecting heir) argues that "acceptance" means acceptance by the heirs of the estate, and he objects. Mr. Helgesson, on the other hand, argues that "acceptance" means simply acceptance by the personal representative. However the testimony of the personal representative and her attorney—that she should ask the heirs for approval—indicates that they anticipated obtaining approval of the heirs prior to signing the earnest money agreement. Their testimony also reveals that approval was actually sought before the agreement was signed, but that Mr. Frank opposed the sale. We therefore conclude that, in the context of this agreement, "acceptance" means acceptance by the heirs and that this condition failed.

The sale can proceed, however, if court approval is obtained. ORS 114.275 provides that

"* * * a personal representative or any interested person may apply to the court for authority, approval or instructions on any matter concerning the administration, settlement or distribution of the estate, and the court, without hearing or upon such hearing as it may prescribe, shall instruct the personal representative or rule on the matter as may be appropriate."

Thus ORS 114.275 is authority for the court to approve or disapprove the sale, if requested to do so by the personal representative or any interested party. Mapp, *The 1969 Oregon Probate Code and Due Process,* 49 Or L Rev 345, 364-65 (1970). Mr. Frank is an interested party and has sought the court's intervention.

Several courts in other jurisdictions have discussed analogous situations. The Iowa Supreme Court

has held that where an executor has a general power under the terms of the will to sell real property of the estate, but includes in a contract to sell a clause subjecting the sale to court approval, such clause is binding. Such clause also gives the court authority to disapprove the sale if the sale would not be in the best interests of the estate. *In re Estate of Rude,* 233 Iowa 792, 10 NW2d 536 (1943); *In re Estate of Wicks,* 207 Iowa 264, 222 NW 843 (1929).

In *Motyka v. Nappier,* 6 NC App 544, 170 SE2d 353 (1969), the beneficiaries under a will filed suit to set aside a sale of real property by the executor. The will specifically directed the executor to liquidate the estate assets before distribution to the beneficiaries in percentage shares. The court said that because the executor had the express power and *duty* to liquidate the estate, the beneficiaries "could not impose a legal obligation upon him [the executor] to hear their objections." 6 NC App at 547. Further, the court said that it would not interfere in the absence of fraud or collusion on the part of the executor and that an allegation of inadequate price alone was not sufficient ground for the court to intervene. 6 NC App at 548; *see also, Koplon v. Koplon,* 274 Ala 214, 148 So2d 245 (1962).

■ Our analysis of the above cases leads us to the conclusion that Mr. Helgesson and the personal representative are bound by the terms of their contract—that they were obliged to seek court approval of the proposed sale. The probate court is not required to disapprove the sale merely because an heir objects that the price is not adequate; however the court may disapprove the sale if such sale would not be in the best interests of the estate.

The language of the will, devising percentage shares of the "distributive estate" and granting the personal representative broad powers to deal with the assets of the estate, is analogous to the situation in *Motyka v. Nappier,* supra. However the court does have the discretion either to approve or disapprove the sale, whichever the court considers to be in the best interests of the estate, not necessarily the particular interest of an objecting heir.[9] The court's authority, initiated by Mr. Frank's filing of formal objections to the proposed sale, stems from ORS 114.275. Under the terms of the earnest money agreement, the court's approval is necessary for the sale to Mr. Helgesson.

### 3. Helgesson's intervention

In these proceedings Mr. Frank sought to challenge the power and authority of the personal representative to sell real property of the estate. This was not a proceeding to determine title to that property. Mr. Helgesson, as the buyer under the earnest money agreement, sought intervention as an "interested person."

An "interested person" includes, but is not limited to, "heirs, devisees, children, spouses, creditors, and any others having a property right or claim against the estate of a decedent that may be affected by the proceeding * * *." ORS 111.005 (19). Mr. Helgesson is an "interested person" in the sense that the earnest money agreement gave him a contract right which would be affected by the probate court's decision concerning the power of the personal representative to

---

[9] We also note that Mr. Frank has not alleged fraud or collusion by the personal representative as a ground to set aside the sale. Mr. Frank has, however, offered to pay a larger sum for the property.

sell the real property in question. And as such an "interested person," Mr. Helgesson is entitled to petition for intervention. ORS 111.205 (1). Probate proceedings are "in the nature of a suit in equity," ORS 111.205; consequently, intervention in these proceedings would be the only practical and effective method by which Mr. Helgesson could protect his interests in the earnest money agreement made with the personal representative. *See, Beers v. Beers, Administratrix,* 204 Or 636, 283 P2d 666 (1955); *Marston v. Myers,* 201 Or 259, 270 P2d 147 (1954); *Cottrell et ux. v. Prier et ux.,* 187 Or 454, 212 P2d 87 (1949).

Mr. Frank also argues that Mr. Helgesson is estopped to intervene. Essentially the argument is that Mr. Helgesson had actual knowledge of Mr. Frank's opposition to the sale and the court hearings thereon. Having such knowledge, Mr. Helgesson did not seek to intervene until after the court directed the personal representative not to proceed with the sale.

■ The evidence in this case does not establish the necessary elements of an estoppel. *See, Earls et ux v. Clarke et ux,* 223 Or 527, 355 P2d 213 (1960); *Mitchell v. McIntee,* 15 Or App 85, 514 P2d 1357 (1973). Mr. Frank relies on Mr. Helgesson's failure to speak at the first court hearings on the question of the personal representative's power to sell estate property.

> "The duty to speak will not arise unless the party against whom the estoppel is urged knew or should have known that his failure to speak would probably mislead the other party to his injury." *Seguin et al. v. Maloney-Chambers,* 198 Or 272, 287, 253 P2d 252, 256 P2d 514, 35 ALR2d 1412 (1953).

The record does not reveal any injury to Mr. Frank by Mr. Helgesson's silence at the first hearing.

Mr. Frank did not have title to the property to be sold. His interests were in the "distributive" assets of the estate, which are more in the nature of liquidated assets, as opposed to an interest in specific property. Therefore estoppel does not apply in this case.

## Conclusion

We conclude that, although the personal representative may sell estate real property without court approval, such approval is necessary in the context of this case. We further conclude that, under the terms of the agreement and the provisions of ORS 114.275, the probate court did have authority either to approve or disapprove the proposed sale to Mr. Helgesson. Therefore, inasmuch as the court's memorandum opinion indicates that the court was under a misapprehension as to its lack of authority to decide this case on the merits, we deem it appropriate that we remand this case for a reconsideration by the court whether to approve or disapprove the sale.

Reversed and remanded for further proceedings not inconsistent with this opinion.